## NATIONAL SYMPHONY ORCHESTRA ASS'N OF WASHINGTON, D. C., v. KONEVSKY.

### No. 324.

Municipal Court of Appeals for the District of Columbia.

Nov. 29, 1945.

Ellis B. Miller, of Washington, D. C. (King & Nordlinger, of Washington, D. C., on the brief), for appellant.

C. Walter Harris, of Washington, D. C., for appellee.

Before CAYTON and HOOD, Associate Judges.

CAYTON, Associate Judge.

This appeal is by the National Symphony Orchestra from a judgment recovered against it by a musician, Joseph Konevsky, for breach of a contract of employment, resulting in loss of salary.

In the spring of 1943 the Orchestra Association prepared and mailed to him in New York two contracts covering his proposed employment as a cellist, one contract being for the six-week summer season, and the second for the full winter season. This was done on the recommendation of plaintiff's brother and without a personal audition. Plaintiff signed and returned both contracts, joined the orchestra and played through the six-week summer season without criticism or complaint. During that period the permanent director, Hans Kindler, conducted only two concerts and the rehearsals for them, one at the beginning and one at the end of the season; the remainder of the summer concerts were directed by guest conductors.

On October 25, 1943 the business manager of the orchestra sent plaintiff a letter informing him that he had been given a contract "which guarantees a minimum season of eighteen weeks." This could have referred only to the winter contract previously executed by the parties. Plaintiff entered upon the performance of his new contract; but after two weeks was discharged on the ground that his services were not satisfactory.

The question for decision is whether the orchestra had the right to terminate plaintiff's services. The answer depends upon two paragraphs in the contracts. The pertinent paragraph in the first or summer season contract reads: "9. If this is your first contract for the position mentioned herein, you agree that you are engaged for a trial period of four weeks of actual playing. This trial period is computed from the date of the first rehearsal. If your services are found unsatisfactory during this trial period, the National Symphony Orchestra Association has the privilege of cancelling this contract."

The paragraph on which the dispute turns is in the second or winter contract and is as follows: "11. If this is your first contract for the position mentioned herein, you agree that you are engaged for a trial period of four weeks of actual playing under the permanent conductor of the orchestra. Ths trial period is computed from the date of the first rehearsal. If your services are found unsatisfactory during this trial period, the National Symphony

Orchestra Association has the privilege of cancelling this contract."

Plaintiff took the position that he was not subject to the four-week trial period during the winter season because this was not his "first contract," and because he had already successfully passed his trial period during the summer season; and that his engagement for the winter season was complete and unequivocal.

The Orchestra Association contended that during the summer season it had no real opportunity to judge the quality of plaintiff's performances because the permanent director had conducted only two of the concerts; and that the provision in the second contract "for a trial period of four weeks of actual playing under the permanent conductor" gave it the right to discharge plaintiff before his contract period was ended.

■ The trial judge agreed with plaintiff's contention and construed the contracts to mean that plaintiff was not required to undergo a second trial period, and that in discharging him the orchestra had breached the contract and was liable for his loss of salary. From our study of the evidence we have reached the same conclusion.

As we view the matter the second contract bound the employer for the entire winter season, for this was not his "first contract for the position mentioned herein" —that of cellist. Plainly and literally his "first contract" was for the summer season; and that contract he had completed. It was later that his second contract went into effect.

In that situation, we think the plain and natural effect of the second contract was to fix the rights of plaintiff and assure him of employment for the full winter season; and that unless he violated some other terms of his employment, he was not subject to dismissal. To take this view is but to restate the familiar rule of contract law that words shall be given their ordinary and usual meaning. E. I. Du Pont De Nemours & Co. v. Claiborne-Reno Co., 8 Cir., 64 F.2d 224, 89 A.L.R. 238, certiorari denied, 290 U.S. 646, 54 S.Ct. 64, 78 L.Ed. 561; Restatement, Contracts, Sec. 235.

■ Even if it can be said that there were ambiguities in either or both of the contracts requiring judicial construction, the legal position of the orchestra would be no better. For if the instruments were fairly or reasonably susceptible of two varying interpretations, the courts would adopt that interpretation which favored plaintiff rather than defendant, which was the author of the contract. American Surety Co. v. Pauly, 170 U.S. 133, 18 S.Ct. 552, 42 L.Ed. 977; Minton v. F. G. Smith Piano Co., 36 App.D.C. 137, 33 L.R.A.,N. S., 305; Nicolopole v. Love, 39 App.D.C. 343, 47 L.R.A.,N.S., 949; McDevitt v. Waple & James, Inc., D.C.Mun.App., 34 A.2d 39; Restatement, Contracts, Sec. 236 (d).

Moreover, though no further criterion is needed, we may point to what the defendant itself said and did. It had the opportunity to test the quality of plaintiff's performance before it offered him the second contract. And whether it exercised such opportunity or not, it tendered him the contract with an accompanying letter assuring him that it guaranteed "a minimum season of eighteen weeks." Thus we are given a quite telling demonstration of the practical construction defendant itself put upon the contract,[1] before the dispute arose.

Counsel for appellant cite us to numerous federal and state cases. These we have examined, and we think none of them is at variance with the settled and fundamental doctrines we have stated and followed. Appellant has also presented a resume of the factual angles of the dispute and has recounted the practical difficulties confronting the management of an orchestra of this size and character, in dealing with its personnel and in effecting the transition from summer to winter season. These matters, too, we have carefully considered before making our decision. But we can not escape the conclusion that if the orchestra had desired to subject the plaintiff to a second trial period or a personal audition, or series of auditions, by the permanent conductor, it should have bound him accordingly by clear language, in the contract or contracts it offered him.

Affirmed.

[1] See Klein v. Miles, D.C.Mun.App., 35 A.2d 243.