**Fouad ALAMI, et al., Plaintiff,**

v.

**LINCOLN PROPERTY COMPANY, et al., Defendants.**

**Case No. 1:14–cv–00915–GBL–JFA.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Signed Nov. 24, 2014.

John Leon Marquardt, Jr., Marquardt Law, Washington, DC, for Plaintiff.

Christopher Allan Glaser, Mitchell B. Weitzman, Jackson & Campbell PC, Washington, DC, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

GERALD BRUCE LEE, District Judge.

THIS MATTER is before the Court on Defendants Pembroke Real Estate, Inc. ("Pembroke") and 1201–1225 New York Avenue SPE, LLC's ("SPE"; "landlord") Motion to Dismiss the First Amended Complaint ("Motion to Dismiss") (Doc. 11) and Defendants LPC Commercial Services, Inc. ("LPCCSI") and Lincoln Property Company's ("Lincoln") Motion to Dismiss the First Amended Complaint ("Motion to Dismiss") (Doc. 17) (collectively "Defendants"; "Motions to Dismiss").[1] This case arises from Defen-

---

1. On November 5, 2014, the Court entered an Order (Doc. 41) granting Defendant Lincoln and proposed Intervenor LPCCSI's Motion to Intervene and to Deem Motion to Dismiss as

dants' alleged failure to timely complete the "buildout" of the Alamis' business located at 1201 New York Avenue NW, Washington, D.C.[2] The first issue is whether the Court should grant Pembroke and SPE's Motion to Dismiss. The second issue is whether the Court should grant LPCCSI and Lincoln's Motion to Dismiss.

The Court GRANTS Defendants' Motions to Dismiss for four reasons. First, the Plaintiffs' breach of Work Agreement claim must be dismissed because the language of the Lease bars any delay in buildout claims. Second, the Plaintiffs' negligence claim must be dismissed because District of Columbia law precludes recovery for negligence claims based on a breach of contract under the economic loss doctrine. Third, the Plaintiffs' promissory estoppel claim must be dismissed because it is insufficiently plead. Fourth, the Complaint must be dismissed because this Court should abstain from exercising jurisdiction and defer the claims to an ongoing state court proceeding. Additionally, the Court also GRANTS Pembroke and SPE's Motion to Dismiss Plaintiffs' claims because Pembroke cannot be personally liable as a disclosed agent.

## I. BACKGROUND

Plaintiffs Fouad and Cynthia Alami ("the Alamis") are owners and operators of a District of Columbia shoe repair and dry cleaning business. (Doc. 3 ¶ 10.) The Alamis are Virginia citizens. (*Id.* ¶ 1.) The Alamis opened "12th and G Street Clean-

Filed by Lincoln Property Company and by LPC Commercial Services, Inc. (Doc 33.) Accordingly, LPCCSI was allowed to intervene and LPCCSI's Motion to Dismiss (Doc. 17) was deemed as filed by both LPCCSI and Lincoln.

2. In the Complaint, Plaintiff occasionally states that the alleged misconduct happened

ers and Shoe Repair" in June 2003. (*Id.* ¶ 10.) In March 2012, the Alamis were told that they must vacate their location by December 31, 2012. (*Id.* ¶ 13.) The Alamis found a new location for their business at 1201 New York Avenue NW, and on August 1, 2012, entered into a five year Retail Lease Agreement ("Lease"; Doc. 3–5 at 2) with Defendant SPE to rent space therein ("the Premises"). SPE is a Delaware corporation headquartered in Washington, D.C., and served as the Alamis' landlord. (Doc. 3 ¶ 4.) The lease term was set to commence on January 1, 2013, subject to Section 3(a) of the Lease, which defines "Commencement Date." (Doc. 3–5 at 2.)

Although the Lease contemplates a separate Work Agreement, no such document was ever executed. (Doc. 3 ¶ 17.) However, the Alamis contend that a Work Agreement "arose between the Alamis, Pembroke, SPE and Lincoln through the communications between these parties and their agents following the execution of the Lease." (*Id.*) The Alamis further contend that "[t]he 'punch list,' in turn, likewise so-arose and, per the Lease, was to be executed 'in accordance with the terms of the Work Agreement,' not the Lease itself." (*Id.*)

On October 4, 2012, the Alamis provided Lincoln with their security deposit and first month's rent. (*Id.* ¶ 19.) The Lease was not executed until November 7, 2012. (*Id.* ¶ 20.) The Lease was signed by Pembroke Senior Vice President David Lucey. (*Id.*) During this time the Alamis still

in 2014, not 2013. Having reviewed the pleadings in their entirety, it appears that this was a typographical error and Plaintiff intended to plead allegations occurring in 2013. When citing the Complaint *infra*, the Court refers to the alleged misconduct as occurring in 2014.

thought the work would be completed in time for their January 1, 2013 move-in date. (*Id.* ¶ 20.)

On December 26, 2012, Mrs. Alami emailed Lincoln project manager Bob Knopf stating that "[they] are scheduled to move this Saturday, 12/29," and inquiring whether "the space [will] be ready?" (*Id.* ¶ 27.) The Alamis received no response from Mr. Knopf for several days and moved in on December 31, 2012. (*Id.* at ¶ 28.) Upon moving in, the Alamis discovered several problems: (1) it appeared that construction had recently started as the entire space "had the look of a construction site"; (2) there was no dedicated plug for their shoe repair machine; and (3) the new store front door was not installed. (*Id.* ¶ 29.) That same morning, Mr. Knopf replied to the Alamis' December 26th email, stating that "[w]e are still a few weeks out for the store front to be installed" and that they had not "received our full permitted drawings from the architect in order to obtain our permits." (*Id.* ¶ 29.) Mr. Knopf promised to update the Alamis when he had "some dates." (*Id.*)

The Alamis opened their shop for business on January 2, 2013. (*Id.* ¶ 30.) On January 8, 2013, the Alamis learned that (1) Lincoln still did not have a permit to do work on "the exterior and close up the interior walls"—Lincoln anticipated obtaining this permit by the end of January; and (2) the store front installation would not be complete until late February 2013. (*Id.* ¶ 36.) Lincoln acquired the building permit in early February; however, the Alamis still could not obtain a certificate of occupancy from the District of Columbia government until a final inspection was done on the construction. (*Id.* ¶¶ 41–42.) Construction did not begin until mid-March and the Alamis did not receive a certificate of occupancy until April 15, 2013. (*Id.* ¶ 46.) "[A]s late as May 9, 2013, carpeting remained incomplete, damage to the wall remained, and painting had yet to be done." (*Id.* ¶ 47.)

The Alamis allege that the resultant effect of the construction delays on their business was "substantial." (*Id.* ¶ 48.) "Customers complained both about having to go into the interior of the building just to drop things off and about the general conditions of the store." (*Id.*) They claim that monthly revenue at the new location was fifty percent less than what it was at their former location. (*Id.* ¶ 50.) The Alamis were barely meeting their expenses. (*Id.*) As a result of the sharp decline in revenue and profitability, in August 2013 the Alamis decided to close the business. (*Id.* ¶¶ 50–51.)

The Alamis filed their Amended Complaint on August 8, 2014, asserting claims of negligence, promissory estoppel, and breach of the Work Agreement. Defendants' Motions to Dismiss are now before the Court.

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) enables a defendant to move for dismissal by challenging the sufficiency of the plaintiff's complaint. FED. R. CIV. P. 12(b)(6). A Rule 12(b)(6) motion should be granted where the plaintiff has failed to "state a plausible claim for relief" under Rule 8(a). *Walters v. McMahen,* 684 F.3d 435, 439 (4th Cir.2012) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). To be facially plausible, a claim must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 554 (4th Cir.2013) (quoting *Iqbal,* 556 U.S. at

678, 129 S.Ct. 1937). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations, which if taken as true, "raise a right to relief above the speculative level" and "nudg[e] [the] claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir.2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The requirement for plausibility does not mandate a showing of probability but merely that there is more than a possibility of the defendant's unlawful acts. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir.2009) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). As a result, a complaint must contain more than "naked assertions" and "unadorned conclusory allegations" and requires some "factual enhancement" in order to be sufficient. *Id.* (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937; *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). In addition to the complaint, the court will also examine "documents incorporated into the complaint by reference," as well as those matters properly subject to judicial notice. *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir.2013) (citations omitted); *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 176 (4th Cir.2009) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)).

A court's Rule 12(b)(6) review involves separating factual allegations from legal conclusions. *Burnette v. Fahey*, 687 F.3d 171, 180 (4th Cir.2012). In considering a Rule 12(b)(6) motion, a court must give all reasonable inferences to the plaintiff and accept all factual allegations as true. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir.2011) (citations omitted). Though a court must accept the truthfulness of all factual allega-

tions, it does not have to accept the veracity of bare legal conclusions. *Burnette*, 687 F.3d at 180 (citing *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir.2011)).

A court must grant a Rule 12(b)(6) motion where a complaint fails to provide sufficient nonconclusory factual allegations to allow the court to draw the reasonable inference of the defendant's liability. *Giacomelli*, 588 F.3d at 196–97 (citing *Iqbal*, 556 U.S. at 678–79, 129 S.Ct. 1937; *Gooden v. Howard Cnty., Md.*, 954 F.2d 960, 969–70 (4th Cir.1992) (en banc)).

## III. ANALYSIS

The Court GRANTS Defendants' Motions to Dismiss for four reasons. First, the breach of Work Agreement claim is dismissed because the language of the Lease precludes any claims for consequential damages associated with landlord's delay in completing the buildout. Second, the negligence claim is dismissed because District of Columbia law precludes recovery for negligence claims based on a breach of contract under the economic loss doctrine. Third, the promissory estoppel claim is dismissed because it was insufficiently plead. Fourth, the Complaint is dismissed because this Court should abstain from exercising jurisdiction. Additionally, the Court also GRANTS Pembroke and SPE's Motion to Dismiss Plaintiffs' personal claims against Pembroke because Pembroke cannot be personally liable as a disclosed agent.

### A. Breach of Work Agreement

■■■ The Court GRANTS Defendants' Motions to Dismiss the breach of Work Agreement claim because Section 3(b) of the Lease precludes any claims stemming from delay in the buildout of Plaintiffs' storefront. District of Columbia law controls construction of the Lease and the breach of Work Agreement claim. (Doc.

3–5 § 29(n)) ("This Lease shall be subject to and construed in accordance with the laws of the District of Columbia.") District of Columbia law presumes that words in a contract are given their ordinary meaning. *See Sagalyn v. Found. for Pres. of Historic Georgetown*, 691 A.2d 107, 111 (D.C.1997) (citing *Nat'l Symphony Orchestra Ass'n v. Konevsky*, 44 A.2d 694, 695 (D.C.1945)).

The Alamis alleged that Lincoln, SPE, and Pembroke breached the Work Agreement because the buildout was not complete until April 2013. (Doc. 3 ¶¶ 61–62.) Section 2(b) of the Lease describes the buildout and provides that:

> Landlord shall deliver the Premises to Tenant in its "as-is" condition without (A) any obligation on Landlord's part to undertake any improvements or alterations therein; or (B) any representations or warranties regarding the condition thereof. Notwithstanding the foregoing, Landlord shall construct in the Premises, at Landlord's sole cost and expense, the following (the "Tenant Improvements"): (i) new paint and carpet and cove base; (ii) installation of a partial wall with p-lam transaction countertop; (iii) installation of exhaust fan and duct work for ventilation; (iv) *installation of a new exterior door, frame and hardware allowing access to the Premises from the exterior of the Building;* and (v) re-use, replace or add ceiling tiles, lights and electrical outlets as required. *The Tenant Improvements shall be constructed pursuant to a space plan to be mutually agreed upon by the parties each acting reasonably and in good faith.* Notwithstanding anything herein to the contrary, the parties acknowledge and agree that the Tenant Improvements shall be constructed using Building-standard materials.

(Doc. 3–5 at 4) (emphasis in Doc. 3 ¶¶ 14–15). However, the Alamis also assert that no Work Agreement was ever executed. Although the Lease thus expressly contemplates a separate contract relating to the completion of the buildout, *the Alamis did not execute any document entitled a "Work Agreement."* A Work Agreement accordingly arose between the Alamis, Pembroke, SPE and Lincoln through the communications between these parties and their agents following the execution of the Lease. The *"punch list," in turn, likewise so-arose* and, per the Lease, was to be executed "in accordance with the terms of the Work Agreement," not the Lease itself. (Doc. 3 ¶ 17) (emphasis added). Section 2(c) of the Lease provides greater context for the purpose of the punch list:

> The taking of possession of the Premises by Tenant shall constitute an acknowledgment by Tenant that the Premises are in good condition, that Landlord has provided or constructed all improvements to be provided or constructed by Landlord in the Premises in accordance with the Work Agreement and that all materials and labor provided by Landlord are satisfactory, except as to any defects or incomplete work that are specified on the punch list delivered to Landlord by Tenant. Landlord agrees to complete all punch list items which Landlord's architect confirms are defects or incomplete Items in accordance with the terms of the Work Agreement.

*Id.* at 4 (emphasis in Doc. 3 ¶ 15.) Because the Work Agreement was not executed and no punch list was created, the Court must look to the Lease itself to determine if any breach occurred.

Defendants argue that Section 3(b) of the Lease governs this claim. That section provides that, "In the event that substantial completion of the Tenant Improve-

ments is delayed for any reason, this Lease shall remain in full force and effect and *Tenant shall have no claim against Landlord by reason of any such delay.*" (Doc. 3–5 at 5) (emphasis added). The Court finds this argument persuasive. The Alamis bring their breach of contract action based on a delay in completing the build out. The Complaint alleges that "Pembroke, SPE, and Pembroke and SPE's agent, Lincoln Properties, breached this agreement by failing to complete the retail build out until April 2013, with work continuing into May 2013." (Doc. 3 ¶ 62.) Because Section 3(b) *explicitly precludes* the Alamis from bringing any claims against Defendants stemming from a delay in completing the buildout, the breach of contract claim must be dismissed.

## B. Negligence

■ The Court GRANTS Defendants' Motions to Dismiss the negligence claim because the District of Columbia's economic loss doctrine precludes such a claim. In *Aguilar v. RP MRP Wash. Harbour LLC,* the District of Columbia Court of Appeals adopted the economic loss doctrine. 98 A.3d 979 (D.C.2014). Under the economic loss doctrine, matters which stem from contractual relationships cannot be the subject of tort claims because the damages a party is entitled to for breach of contract are the difference between what a party bargained for and what the party received. *See generally* 65 C.J.S. *Negligence* § 56 (2014). Tort damages are intended to compensate for injuries caused by breach of some "duty" independent of contract. *See E. River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 873 n. 9, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). Tortious injuries include emotional distress, pain and suffering, and personal injury. *See, e.g., Warren v. Medlantic Health Grp., Inc.,* 936 A.2d 733 (D.C.2007) (pain and suffering); *Croley v. Republican Nat'l Comm.,* 759 A.2d 682 (D.C.2000) (personal injury); *Howard Univ. v. Best,* 484 A.2d 958 (D.C.1984) (emotional distress).

■ In the District of Columbia, the economic loss doctrine "bars recovery of purely economic losses in negligence, subject to only one limited exception where a special relationship exists." *Aguilar v. RP MRP Wash. Harbour LLC,* 98 A.3d 979, 985–86 (D.C.2014). Special relationships include (1) carrier-passenger, (2) innkeeper-guest, (3) invitor-invitee or possessor of land open to the public and one lawfully upon the premises, (4) employer-employee, (5) school-student, (6) landlord-tenant, and (7) custodian-ward. *See Hedgepeth v. Whitman Walker Clinic,* 22 A.3d 789, 812 n. 39 (D.C.2011) (en banc) (citing Dan B. Dobbs, *Undertakings and Special Relationships in Claims for Negligent Infliction of Emotional Distress,* 50 Ariz. L.Rev. 49, 54 (2008)).

■ The landlord-tenant special relationship specifically entails a "duty of protection." *Sigmund v. Starwood Urban Inv.,* 475 F.Supp.2d 36, 42 (D.D.C.2007). Landlords have a duty to protect tenants from criminal activity and physical defects on the property. *See Doe v. Dominion Bank,* 963 F.2d 1552, 1561 (D.C.Cir.1992) ("[A] commercial landlord has a duty to take reasonable measures to safeguard tenants from foreseeable criminal conduct in the common areas of leased premises."); *Hall v. Ford Enters., Ltd.,* 445 A.2d 610, 611 n. 4 (D.C.1982) ("More recently, a duty has been found on the part of a landlord to protect tenants from foreseeable harm from third persons in areas under the landlord's control." (citations omitted)); *Graham v. M & J Corp.,* 424 A.2d 103, 105 (D.C.1980) ("This duty has been extended to encompass situations where third party criminal acts injure tenants on the premises, when the criminal activity should have

been foreseen by the landlord."); *Levine v. Katz*, 407 F.2d 303, 304 (U.S.App.D.C. 1968) (observing that physical defects on property lead to plaintiff's injury). Thus, District of Columbia case law demonstrates that a special relationship in tort exists between landlords and tenants only when the tortious injury complained of stems from the landlord's abdication of their duty to protect the tenant from harm. Here, Plaintiffs failed to plead any facts showing that the negligence claim stems from a failure of SPE to protect them from harm. Instead, it appears that the negligence claim is based solely upon an alleged breach of contract that was coincidentally between a landlord and tenant. Accordingly, this Court holds that no special relationship in tort existed between the Plaintiffs and SPE and thus declines to impose a higher duty of care on SPE.

In an action for negligence for recovery of economic loss, if the facts alleged in the complaint do not fit within the special relationship exception, the plaintiff has failed to state a claim upon which relief can be granted. *Aguilar*, 98 A.3d at 985–86. Here, the Alamis contend that Defendants failed "to deliver ... a continuation of their retail operation by December 31, 2013 at 1201 New York Avenue." (Doc. 3 ¶ 54.) As a result, the Alamis claim to have suffered economic damages. This cause of action is precisely what the economic loss doctrine bars and is thus not cognizable in the District of Columbia under *Aguilar*. Because the Alamis did not allege facts showing that a special relationship existed between SPE and the Alamis, the existence of which makes the economic loss doctrine inapplicable, the Alamis have failed to state a claim upon which relief can be granted and their negligence claim must be dismissed.

## C. Promissory Estoppel

■■■■ The Court GRANTS Defendants' Motions to Dismiss the promissory estoppel claim because the claim is insufficiently plead. The doctrine of promissory estoppel provides that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promise ... and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *W.J. Schafer Assocs. v. Cordant, Inc.*, 254 Va. 514, 520–21, 493 S.E.2d 512 (1997) (citing RESTATEMENT (SECOND) OF CONTRACTS § 90(1) (1981)). "In order to prove promissory estoppel, a party must show an express or implied promise ... and [the party's] detrimental reliance on that promise.... As such, a legal obligation under promissory estoppel is not formed unless and until the promise induces detrimental reliance." *Nasser v. WhitePages, Inc.*, No. 5:12cv097, 2013 WL 6147677, at *6 (W.D.Va. Nov. 22, 2013) (citations omitted). In *Nasser*, the court analyzed the promissory estoppel claim by attempting to determine where the "final component of the promissory estoppel claim" arose. *Id.*

A federal court sitting in diversity must apply the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Accordingly, because the Alamis bring a claim of promissory estoppel, the Court must ascertain where the last act of reliance occurred in order to determine which state's promissory estoppel laws apply. *See Nasser*, 2013 WL 6147677, at *6. This Court shall apply the laws of the state where the last act of reliance occurred; however, here it is unclear where the last act of reliance was.

The final act alleged in the Complaint is a May 9, 2013, email from Bob Knopfs Virginia office to the Virginia-residing Alamis. (Doc. 3 ¶ 47.) In the email Mr.

Knopf writes that "I spoke to the contractor yesterday about this. *I will make sure it gets wrapped up immediately.*" (Doc. 3–25) (emphasis added). However, the Alamis fail to plead any facts allowing the Court to determine where the reliance upon that email occurred. This is a critical omission due to the varying laws of Virginia and the District of Columbia.

It is undisputed that Virginia does not recognize the doctrine of promissory estoppel. *See Nguyen v. CNA Corp.,* 44 F.3d 234, 241 (4th Cir.1995) ("... Virginia courts have repeatedly refused to adopt the doctrine of promissory estoppel as part of Virginia's common law."). The District of Columbia, however, recognizes the doctrine of promissory estoppel. *See, e.g., Wallace v. Eckert, Seamans, Cherin & Mellott, LLC,* 57 A.3d 943 (D.C.2012). Because the Alamis failed to plead facts that allow the Court to determine where the last act of reliance occurred, and thus ascertain which jurisdiction's laws on promissory estoppel apply, the claim of promissory estoppel is implausible and must be dismissed. Accordingly, Defendants' Motions to Dismiss the promissory estoppel claim must be GRANTED.

### D. Abstention

 ·The Court GRANTS Defendants' Motions to Dismiss as to abstention because the Alamis can plead any remaining counterclaims in the ongoing state court proceeding. In determining whether

to abstain, a district court "must consider: (1) whether parallel proceedings are ongoing in state court; and (2) whether exceptional circumstances counsel abstention." [3] *Noell Crane Sys. GmbH v. Noell Crane & Serv., Inc.,* 677 F.Supp.2d 852, 864 (E.D.Va.2009) (citing *Jackson Hewitt, Inc. v. J2 Fin. Servs., Inc.,* 901 F.Supp. 1061, 1065 (E.D.Va.1995)). In *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Supreme Court added an additional factor of whether the later-filed lawsuit is reactive or vexatious. *See Baseline Sports, Inc. v. Third Base Sports,* 341 F.Supp.2d 605, 608 (E.D.Va.2004); *Holland v. Hay,* 840 F.Supp. 1091, 1102 (E.D.Va.1994).

Here there is a parallel landlord-tenant proceeding in state court and there are no exceptional circumstances present. The Alamis contend that because the Lease bars counterclaims between the Landlord and the Alamis, this forum is more appropriate. The Court finds that the Lease does not bar third-party claims against Lincoln, LPCCSI, or Pembroke. The Alamis also contend that the federal forum is preferable because the trial is set sooner. The Court holds that the proximity of a trial date is not an exceptional circumstance in this Circuit. Accordingly, because of the ongoing parallel proceedings in state court and there being no exceptional circumstances present, the Court abstains from exercising jurisdiction and De-

---

**3.** Courts should consider the following factors in determining whether exceptional circumstances exist:

1) whether either court has exercised *in rem* jurisdiction over property; 2) whether the federal forum is an inconvenient one; 3) the desirability of avoiding piecemeal litigation; 4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; 5) whether state law or federal law provides the rule of decision on the merits; and 6) the adequacy of the state proceeding to protect the parties' rights.

*Noell Crane Sys. GmbH v. Noell Crane & Serv., Inc.,* 677 F.Supp.2d 852, 865 (E.D.Va.2009); *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 15–16, 19–27, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Colo. River Water Conserv. Dist. v. United States,* 424 U.S. 800, 818–819, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

fendants' Motions to Dismiss on this ground are GRANTED.

### E. Agency

The Court GRANTS Pembroke and SPE's Motion to Dismiss all claims against Pembroke because Pembroke was acting as a disclosed agent to SPE and cannot be held personally liable under District of Columbia law. When interpreting a contract, the Court must construe the entire writing as a whole, "giving a reasonable, lawful, and effective meaning to all its terms." *Debnam v. Crane Co.*, 976 A.2d 193, 197 (D.C.2009) (internal quotation marks omitted) (citing *1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc.*, 485 A.2d 199, 205–06 (D.C. 1984)). Under District of Columbia law, "an agent is not personally liable on a contract it executes on behalf of a principal so long as it identifies the principal and discloses the agency relationship." *Paul v. Judicial Watch, Inc.*, 543 F.Supp.2d 1, 5 (D.D.C.2008) (citing *Rittenberg v. Donohoe Constr. Co.*, 426 A.2d 338, 341 (D.C.1981)). "Nor does liability attach to an agent of a disclosed principal for his act within the scope of the agency unless he binds himself by definite word or stipulation." *Hardy v. Joseph I. Sussman, P.C.*, 953 F.Supp.2d 102, 110, n. 4 (D.D.C.2013); *see also Judicial Watch*, 543 F.Supp.2d at 5.

Here, after a careful review of the Lease, the Court finds that Pembroke was acting as an agent of SPE. First, the signature page of the Lease provides that "*duly authorized representatives of Landlord* and Tenant have executed this Office Lease Agreement...." (Doc. 3–5 at 25) (emphasis added). Below that language, the Landlord is listed as SPE. (*Id.*) Second, the signature page further indicates that the Lease was signed by Pembroke. (*Id.*) Liability does not attach to an agent of a disclosed principal for his acts within

the scope of the agency *unless* he binds himself by word or stipulation. *See Judicial Watch*, 543 F.Supp.2d at 5. Because no such statement is present here, no basis exists for the Alamis' claims for damages against Pembroke as agent for SPE. Because the Court holds that all claims against Pembroke must be dismissed as Pembroke was acting as a disclosed agent to Landlord SPE, Pembroke and SPE's Motion to Dismiss on this ground must be GRANTED.

### IV. CONCLUSION

The Court GRANTS Defendants' Motions to Dismiss for four reasons. First, the breach of Work Agreement claim must be dismissed because the language of the Lease precludes any breach of Work Agreement claim asserted by the Alamis. Second, the negligence claim must be dismissed because District of Columbia law precludes recovery for negligence claims based on a breach of contract under the economic loss doctrine. Third, the promissory estoppel claim must be dismissed because it is insufficiently plead. Fourth, the Complaint must be dismissed because this Court should abstain from exercising jurisdiction. Additionally, the Court also GRANTS Pembroke and SPE's Motion to Dismiss because Pembroke cannot be personally liable as a disclosed agent. Accordingly, it is hereby

**ORDERED** that Defendants Pembroke and SPE's Motion to Dismiss the First Amended Complaint (Doc. 11) is **GRANTED;** and it is further

**ORDERED** that Defendants LPCCSI and Lincoln's Motion to Dismiss the First Amended Complaint (Doc. 17) is **GRANTED.**

**IT IS SO ORDERED.**