*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| FARTHEST NORTH GIRL SCOUT COUNCIL, RUSS SHARPTON, and SUELLEN NELLES, | Supreme Court No. S-17144 |
| | Superior Court No. 4FA-17-01413 CI |
| Appellants, | |
| | O P I N I O N |
| v. | |
| | No. 7408 – September 13, 2019 |
| GIRL SCOUTS OF THE UNITED STATES OF AMERICA, | |
| | |
| Appellee. | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Bethany Harbison, Judge.

Appearances: Susan Orlansky, Reeves Amodio LLC, Anchorage, and Gary W. Leydig, The Law Firm of Gary W. Leydig LLC, Chicago, Illinois, for Appellants. James E. Torgerson, Stoel Rives, LLP, Anchorage, and Karin D. Jones, Stoel Rives LLP, Seattle, Washington, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

CARNEY, Justice.

## I.  INTRODUCTION

The Board of Directors of the Girl Scouts of the United States of America increased the amount of annual membership dues. Farthest North Girl Scout Council,

its executive director, and the chair of its board of directors challenged this increase, claiming that the corporation's governing documents did not give the Board authority to increase membership dues. The superior court denied Farthest North's motion for summary judgment, ruling in favor of the Girl Scouts of the United States of America that the Board had such authority. Because the corporate governing documents vest authority to establish membership dues solely in the National Council of the Girl Scouts of the United States of America, we reverse and remand for further proceedings.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Girl Scouts of the United States of America (GSUSA) is a congressionally chartered nonprofit corporation.[1] Appellants (collectively Farthest North) are leaders of the Farthest North Girl Scout Council, a chartered Girl Scout Council responsible for promoting and organizing Girl Scouts programs in Fairbanks and northern Alaska.

The governing body of GSUSA is the National Council, comprised of approximately 1,500 individuals, including some elected by local Girl Scout Councils such as Farthest North.[2] The National Council meets triennially[3] and elects the members

---

[1]    36 U.S.C. § 80301(a) (2018); *see* GIRL SCOUTS OF THE USA, *Disclosure Statement*, https://www.girlscouts.org/en/help/help/disclosure-statement.html (last visited Jun. 19, 2019).

[2]    GSUSA Const. art. IV, §§ 2, 4. Membership in the National Council consists of delegates from individual Girl Scout councils, delegates from overseas chapters, members of the National Board of Directors, members of the National Board Development Committee, past GSUSA presidents, and any other elected individuals. *Id.* at § 4. We note, however, that the members of the National Council should not be confused with the dues-paying Girl Scouts members.

[3]    GSUSA Const. art. V, § 1. During the time relevant to this appeal, the National Council has met at least twice, once in 2014 and once in 2017.

of the National Board of Directors (Board).[4]  The Board is comprised of the Chair of the National Board Development Committee, the Chief Executive Officer, 25 members-at-large, and officials elected by the Board members, including the President, Vice Presidents, Secretary, and Treasurer.[5]  GSUSA's governing documents are the codified Congressional Charter and the GSUSA Constitution and Bylaws.[6]

A person wishing to become a Girl Scouts member must pay membership dues to GSUSA.[7]  As a Girl Scouts Council, Farthest North is responsible for collecting dues from members in its jurisdiction; it then forwards those dues to GSUSA.  The National Council voted to increase membership dues nine times between 1941 and 2009.  In 2009 it established a requirement that every Girl Scouts member pay annual membership dues of $12.  But in 2012 the Board increased the membership dues by $3, to $15 per member.  And in 2016 the Board again increased the membership dues by $10, making the annual dues $25.  In neither 2012 nor in 2016 did the Board present its dues increase to the National Council for approval.

Farthest North objected to the Board's dues increases.  Farthest North wrote to GSUSA that it would not participate in the collection of what it considered to be "unauthorized dues."  Though Farthest North did collect $15 from each member, it only

---

[4]     GSUSA Const. art. X, §§ 2-3; GSUSA Const. art. XI, § 2.

[5]     GSUSA Const. art. X, § 2; GSUSA Const. art. XI, § 2.

[6]     In addition, GSUSA has a pamphlet titled "Blue Book of Basic Documents," which contains all GSUSA documents, including those titled "Policies" and "Credentials."  Though the parties refer to this document in their briefs, we do not consider it on appeal and therefore do not need to determine whether it is a corporate governing document.

[7]     GSUSA Const. art. IX.

forwarded $12 from each to GSUSA.[8] In response GSUSA informed Farthest North in late 2016 that it was in breach of its Charter Agreement and refused to enroll any Farthest North members, refused to allow any Farthest North members to participate in Girl Scouts activities, and refused to insure any Farthest North member who participated in any Girl Scouts activities.

## B. Proceedings

In February 2017 Farthest North filed suit against GSUSA. Its complaint sought declaratory judgment that only the National Council had authority to increase membership dues and that the Board's increase was therefore without authority. Farthest North also moved for an injunction barring any future enforcement of the Board's increased membership dues. In addition Farthest North alleged wrongful charitable solicitation, unfair trade practices, tortious interference with fiduciary duty, and breach of contract by GSUSA.

GSUSA moved to dismiss Farthest North's complaint pursuant to Alaska Civil Rule 12(b)(6).[9] Farthest North moved for partial summary judgment on its request for declaratory judgment. GSUSA opposed Farthest North's motion for summary judgment and cross-moved for summary judgment, arguing that "[a]s a matter of law, the authority to set membership dues is shared." The superior court ruled in favor of GSUSA and concluded that the Board had authority to increase membership dues, thereby denying Farthest North's motion, rendering GSUSA's motion to dismiss moot, and granting GSUSA's motion for summary judgment.

---

[8]  Farthest North placed the remaining $3 from each member into a separate account "to protect the interests of Farthest North's members."

[9]  Alaska Rule of Civil Procedure 12(b)(6) allows a party opposing a civil complaint to file a motion to dismiss for "failure to state a claim upon which relief can be granted."

Farthest North appeals.

## III.  STANDARD OF REVIEW

We apply de novo review to a superior court's decisions on motions for summary judgment, " 'reading the record in the light most favorable to the non-moving party and making all reasonable inferences in its favor.'  A party is entitled to summary judgment only if there is no genuine issue of material fact and if the party is entitled to judgment as a matter of law."[10]  "When applying the de novo standard of review, we apply our 'independent judgment to questions of law, adopting the rule of law most persuasive in light of precedent, reason, and policy.' "[11]

## IV.  DISCUSSION

### A.  Choice Of Law

The superior court applied Washington, D.C. law to interpret GSUSA's corporate documents because GSUSA was incorporated there.  The court based its decision on § 302 of the Restatement (Second) of Conflict of Laws, which provides that "[i]ssues involving the rights and liabilities of a corporation" will be determined by applying "the local law of the state of incorporation."  Neither party disputes this choice of law on appeal, so we also apply the law of Washington, D.C.

### B.  Congressional Charter

Congress has constitutional authority to charter a wide range of

---

[10]    *ConocoPhillips Alaska, Inc. v. Williams Alaska Petroleum, Inc.*, 322 P.3d 114, 122 (Alaska 2014) (quoting *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1033 (Alaska 2003)).

[11]    *Id.* (quoting *Russell ex rel. J.N. v. Virg-In*, 258 P.3d 795, 802 (Alaska 2011)).

organizations with patriotic, educational, or charitable purposes;[12] they are generally referred to as "Title 36 Corporations."[13] Title 36 corporations are not federal agencies,[14] but a special type of corporation that "do[es] not receive direct appropriations, . . . exercise[s] no federal powers, . . . [is] not covered by the full faith and credit of the United States, and . . . do[es] not enjoy original jurisdiction in the federal courts."[15] GSUSA is a Title 36 corporation.[16]

Farthest North argues that the Congressional Charter grants the Board only those powers specified in the GSUSA Constitution and Bylaws, including the power to manage the activities of the corporation. GSUSA, on the other hand, argues that "[t]he Congressional Charter does not restrict [the Board's] authority regarding membership dues or reserve such power to the National Council" because "[i]t makes no mention whatsoever of membership dues."

When reviewing "charters granted by special acts of a legislature," including Congress, Washington, D.C. courts "use the same rules of construction that

---

[12] Under the Necessary and Proper Clause of Article 1, Section 8, Clause 18 of the United States Constitution, Congress has the power to charter organizations such as GSUSA. RONALD C. MOE, CONG. RESEARCH SERV., RL30340, CONGRESSIONALLY CHARTERED NONPROFIT ORGANIZATIONS ("TITLE 36 CORPORATIONS"): WHAT THEY ARE AND HOW CONGRESS TREATS THEM 1-2 (Apr. 8, 2004), available at https://digital.library.unt.edu/ark:/67531/metacrs7367/m1/1/high_res_d/RL30340_20 04Apr08.pdf; U.S. Const. art. I, § 8, cl. 18.

[13] MOE, *supra* note 20, at 1.

[14] *See id.* at 5.

[15] *Id.*

[16] 36 U.S.C. § 80301(a) (2018).

[they] use to examine articles of incorporation adopted pursuant to general law."[17] And because the GSUSA's congressional charter was a special act of the legislature, "[p]rinciples of statutory construction guide our interpretation" of the Congressional Charter.[18]

Where "the statutory language at issue is 'plain and admits of no more than one meaning,' " Washington, D.C. courts will "give effect to the plain meaning of a statute."[19] "Common rules of statutory construction require [Washington, D.C. courts] to avoid conclusions that effectively read language out of a statute whenever a reasonable interpretation is available that can give meaning to each word in the statute."[20] Further, Washington, D.C. courts "may also look to the legislative history to ensure that [the court's] interpretation is consistent with legislative intent."[21] Legislative intent "governs the interpretation of both a special and a general act of incorporation, as both constitute

---

[17]    *Bd. of Dirs., Washington City Orphan Asylum v. Bd. of Trs., Washington City Orphan Asylum*, 798 A.2d 1068, 1078 n.11 (D.C. 2002).

[18]    *Id.* at 1079 (citing 7A WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 3640, at 226-27 (perm.ed., rev.vol., 1997) ("The rules governing the construction of charters of corporations are, for the most part, the same as those which govern the construction and interpretation of statutes, contracts and other written instruments.")).

[19]    *Facebook, Inc. v. Wint*, 199 A.3d 625, 628 (D.C. 2019) (quoting *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc)); *see also Thomas v. Buckley*, 176 A.3d 1277, 1281 (D.C. 2017) ("We begin by looking at the plain language of the statute and, if the plain meaning is clear, we will look no further.").

[20]    *School St. Assocs. Ltd. P'ship v. District of Columbia*, 764 A.2d 798, 807 (D.C. 2001).

[21]    *Facebook, Inc.*, 199 A.3d at 628 (quoting *Buckley*, 176 A.3d at 1281).

legislative acts."[22]

The Congressional Charter establishes that the governing bodies of the GSUSA are the National Council and the Board of Directors.[23] It grants the National Council authority to "adopt and amend a constitution and bylaws and elect a board of directors, officers, and agents,"[24] and it grants the Board "the powers of the Council" but only "[t]o the extent provided in the constitution and bylaws."[25] The operative language we must interpret is "[t]o the extent provided." The superior court interpreted this language to mean that the Board has all the powers of the National Council, unless provided otherwise in the Constitution and Bylaws. Farthest North argues this language plainly means that "[i]f the power is not provided to the Board in the [C]onstitution and [B]ylaws, [then] the Board does not possess it."

We agree with Farthest North. Because a plain reading of the Congressional Charter supports Farthest North's interpretation, we must look to the GSUSA Constitution to determine what, if any, power the Board has to increase membership dues amounts.[26]

## C. GSUSA Constitution

The Washington, D.C. Court of Appeals has held that "the formal [governing documents] of an organization are to be construed as a contractual agreement

---

[22] *Bd. of Dirs., Washington City Orphan Asylum*, 798 A.2d at 1078 n.11.

[23] 36 U.S.C. § 80303 (2018).

[24] *Id.* § 80303(a)(2).

[25] *Id.* § 80303(b)(1).

[26] The GSUSA Bylaws do not address membership requirements or membership dues to any extent. Neither the parties nor the superior court relied on it in this dispute; we also do not.

between the organization and its members."[27]  In interpreting these corporate governing documents, a court "must adhere to the 'objective law' of contracts, under which the written language embodying the terms of an agreement governs the rights and liabilities of the parties."[28]  These rules are "closely analogous" to the rules that govern statutory construction.[29]  The "objective law" of contracts "means that the written language will govern the parties' rights, unless it is not susceptible of clear meaning."[30]  "[W]ords [are] given their ordinary and usual meaning."[31]

Farthest North argues that when read together, Articles V and VIII of the GSUSA Constitution establish the National Council's sole authority to set membership dues amounts.  GSUSA responds that Article V is merely procedural and does not confer exclusive authority on the National Council; it also argues that specific membership dues amounts are not membership "requirements" and therefore the National Council does not have exclusive authority to establish dues amounts under Article VIII.  But because the meaning of Article V is unambiguous and Article VIII reinforces its plain meaning, we hold that the GSUSA Constitution vests sole authority to set membership dues amounts in the National Council.

### 1.  Article V and Article VIII

Article V, § 2 of the GSUSA Constitution provides that "[t]he National

---

[27]  *Meshel v. Ohev Sholom Talmud Torah,* 869 A.2d 343, 361 (D.C. 2005).

[28]  *Id.*

[29]  *Id.* at 355.

[30]  *Sagalyn v. Found. for Pres. of Historic Georgetown*, 691 A.2d 107, 111 (D.C. 1997).

[31]  *Id.* (alterations in original) (quoting *Nat'l Symphony Orchestra Ass'n v. Konevsky*, 44 A.2d 694, 695 (D.C. 1945)).

Council at its sessions shall establish requirements for credentials."[32]  Article VIII, § 1 specifies that a certificate of membership is one such credential.[33]  A certificate of membership is issued to each individual who meets the requirements of membership, including paying annual membership dues.[34]  Because paying membership dues is a requirement for a credential, the National Council is vested with the power to establish the amount of annual dues.  And, pursuant to the Congressional Charter, because the Board is not similarly delegated this power elsewhere in the GSUSA Constitution, the power is exclusively held by the National Council.

Article V, § 5 also supports this conclusion.  Article V, § 5 of the GSUSA Constitution prescribes the voting procedure to be taken by the National Council at its triennial sessions:

> Each member present in person at the National Council shall be entitled to one (1) vote.  *Decision on membership dues shall require a majority of votes cast.*  All matters shall be determined by a majority vote of the members present and voting, unless otherwise provided by this Constitution.[35]

GSUSA argues that the second sentence does not require the National Council to vote on membership dues, but merely establishes the procedure *if* the National Council votes on membership dues.  But GSUSA's interpretation fails to distinguish the second and

---

[32]    GSUSA Const. art. V, § 2.

[33]    GSUSA Const. art. VIII, § 1 ("The National Council shall establish requirements for certificates of membership, local council charters, and all other credentials.").

[34]    GSUSA Const. art. IX.

[35]    GSUSA Const. art. V, § 5 (emphasis added).

third sentences, and renders the second sentence superfluous.[36]  If the second sentence does not serve to designate the National Council as the sole body authorized to increase membership dues then it would be unnecessary to include it:  the third sentence already requires a majority vote for all matters unless otherwise provided by the Constitution. The only reason to separate the specific matter of "decision on membership dues" from "all matters" must be to proclaim that only the National Council has the authority to set them.  We must give meaning to each provision,[37] and giving meaning to the second sentence of Article V, § 5 makes clear that only the National Council has the authority to make decisions on membership dues.

GSUSA argues that Article V and Article VIII only give the National Council the authority to establish the *general* requirement that members must pay dues and that the *specific* amount of those dues is a "standard," which the Board has authority to establish so long as it is consistent with the requirements established by the National Council.[38]  We disagree.  First, the GSUSA Constitution makes clear that the National

---

[36]     *See Abdelrhman v. Ackerman*, 76 A.3d 883, 891 (D.C. 2013) ("When interpreting a contract, we 'strive to give reasonable effect to all its parts and eschew an interpretation that would render part of it meaningless or incompatible with the contract as a whole.' " (quoting *District of Columbia v. Young*, 39 A.3d 36, 40 (D.C. 2012))); *Anderson v. D.C. Hous. Auth.*, 923 A.2d 853, 867 (D.C. 2007) (rejecting contract interpretation that would render language "useless, inexplicable, inoperative, meaningless[,] or superfluous" (quoting *Intercty. Constr. Corp. v. District of Columbia*, 443 A.2d 29, 31-32 (D.C. 1982))); *Phenix-Georgetown, Inc. v. Charles H. Tompkins Co.*, 477 A.2d 215, 225 (D.C. 1984) ("[T]he general rule is that contracts will be read as a whole, and every part will be interpreted with reference to the whole.").

[37]     *See School St. Assocs. Ltd. P'ship v. District of Columbia*, 764 A.2d 798, 807 (D.C. 2001).

[38]     GSUSA Const. art. VIII, § 2 ("The National Board of Directors shall administer the requirements for the credentials established by the National Council, and
(continued...)

-11-                                                    **7408**

Council is entitled to set the amount of membership dues.[39] And second, the National Council had previously set the amount of membership dues at $12, thereby rendering the Board's subsequent dues increase inconsistent with the specific requirement established by the National Council. In 2009 the National Council set a specific requirement that members must pay annual dues of $12; it has not voted to change the dues amount since that time. By setting a specific amount for membership dues, the National Council established a *specific* requirement under Article VIII, which the Board only had authority to administer. By unilaterally increasing the membership dues under the guise of "administration of requirements," the Board exceeded its constitutional authority under Article VIII.

### 2.    Article X

Article X grants the Board the power to manage "[t]he affairs of the corporation between sessions of the National Council."[40] Similar to its argument that its administrative authority under Article VIII grants the Board authority to increase annual memberships dues, GSUSA also argues that the Board's authority to manage the affairs of the corporation between the National Council's triennial sessions also grants it such authority. But Article X does not confer such a power. As discussed above, the National Council reserved the power to establish specific membership requirements in the GSUSA

---

[38]    (...continued)
may establish standards and issue standards, procedures, and interpretations regarding such requirements provided such standards, procedures, and interpretations are consistent with the requirements established by the National Council.").

[39]    GSUSA Const. art. VIII, § 1.

[40]    GSUSA Const. art. X, § 1.

Constitution[41] and acted on that power when it set the specific requirement for annual membership dues at $12. Article X's general grant of the power to the Board to manage the corporation's affairs must yield to more specific constitutional provisions.[42]

In addition, GSUSA's argument that it retains the power to increase annual membership dues under either Article VIII or X inverts the fundamental relationship between the Board and the National Council and would allow the Board to subvert the National Council's authority regarding membership dues. It would also require us to hold that the corporation's charter vests in the Board all powers except those explicitly taken away by the GSUSA Constitution. But the terms of the corporation's charter grant the Board only those powers specifically delegated in the GSUSA Constitution and Bylaws and therefore do not grant it the power to undermine the express decisions made by the National Council.

### D.    GSUSA's Remaining Arguments

GSUSA also argues that Farthest North's interpretation of the GSUSA Constitution is at odds with fundamental principles of corporate law and that the Board's power to manage the corporation's finances is another source of authority to set annual membership dues.

#### 1.    Principles of corporate law

GSUSA argues that the Washington, D.C. Code provisions allowing boards of nonprofit corporations to "[i]mpose dues . . . on [the corporation's] members"[43]

---

[41]    GSUSA Const. art. VIII, § 1.

[42]    *See Ohio Power Co. v. Fed. Energy Reg. Comm'n*, 744 F.2d 162, 168 n.7 (D.C. Cir. 1984) ("[S]pecific clauses prevail over general clauses [when] the clauses stand irreconcilably in conflict.").

[43]    D.C. Code § 29-403.02(14).

support its argument that managing the affairs of the corporation includes setting annual dues amounts. But the section of the Code it cites actually describes what powers the corporation — as an individual legal entity — may have and does not specify which body within the corporation may exercise such powers. Additionally, GSUSA's interpretation confuses members of the GSUSA corporation, i.e., those who "ha[ve] the right . . . to select or vote for the election of directors or delegates or to vote on any type of fundamental transaction,"[44] with the individual Girl Scouts who are "members" of their local charters.

GSUSA further argues that under general rules of corporation law, it is "customary" for a board of directors to exercise broad authority over the corporation, and that this broad authority includes the ability to increase membership dues amounts. But as explained above, the Board does have broad authority, such as its authority to manage the affairs of the corporation between the National Council's triennial sessions.[45] Its authority simply is not broad enough to countermand the specific authority granted to the National Council in the GSUSA Constitution.[46]

## 2. Power to manage finances

GSUSA argues that the GSUSA Constitution grants the Board shared authority with the National Council to manage the corporation's finances and therefore the ability to collect "contributions" from the corporation's members, which would include setting annual membership dues amounts. Article XIV provides: "Contributions for the purposes of this corporation shall be collected only as authorized by the National

---

[44]     *Id.* § 29-401.02(24).

[45]     GSUSA Const. art. X, § 1.

[46]     *See* GSUSA Const. art. IV, § 1.

Council or [the Board]."[47]  A plain reading of the term "contributions" in this context leads us to conclude that Article XIV governs *charitable* contributions, not *mandatory* membership dues.  As GSUSA argued earlier in this case, membership dues are not "charitable contributions" and therefore do not fall under this provision.  Moreover, even if such contributions included membership dues, the ability to "collect" does not connote the authority to set or increase the dues amounts.

## V.    CONCLUSION

Because the GSUSA Constitution grants the National Council the exclusive right to establish membership dues, we REVERSE the superior court's decision granting summary judgment in favor of GSUSA and direct the superior court to enter partial summary judgment in favor of Farthest North.  We REMAND to the superior court for further proceedings on the parties' remaining claims.

---

[47]     GSUSA Const. art. XIV, § 1.