Michael JONES, Personal Represen-
tative of the Estate of Hugh E.
Jones, Appellant

v.

Thomas Scott GRIEG, Appellee.

Michael Jones, Personal Representative
of the Estate of Hugh E. Jones,
Appellant

v.

District of Columbia, et al., Appellees.

No. 98–CV–1141, 98–CV–1391.

District of Columbia Court of Appeals.

Argued Oct. 26, 1999.
Decided July 24, 2003.

Carla M. Mathers, with whom James E. McCollum, Jr., College Park, MD, was on the brief, for appellant. Brenda L. Hopkins, Washington, DC, also entered an appearance for appellant.

Daniel S. Roth, with whom Kurt Berlin, Washington, DC, was on the brief, for appellee Grieg.

John M. Ferren, Corporation Counsel at the time the briefs were filed, and Sheila Kaplan, Assistant Corporation Counsel, filed a statement in lieu of brief for appellees District of Columbia, et al.

Before TERRY, REID, and GLICKMAN, Associate Judges.

TERRY, Associate Judge.

These consolidated appeals involve the validity of a tax sale of a piece of real property. Appellant Michael Jones is the personal representative of the Estate of Hugh E. Jones, the record owner. In response to a motion for summary judg-

ment filed by appellee Grieg,[1] Mr. Jones claimed that the tax sale was invalid because the record owner (his father) had not been properly notified of the expiration of his right of redemption. Although neither appellee presented any evidence to refute this assertion, the trial court granted their respective motions for summary judgment. We hold that the evidence that the post office returned the District's notice as "unclaimed" raised a genuine issue of material fact, and that summary judgment therefore should not have been granted in either case. We therefore reverse the judgment in both cases and remand for further proceedings.

## I

These two appeals arise from two separate cases, one between Thomas Grieg, the tax sale purchaser, as plaintiff, and appellant Jones as defendant, and the other between Jones as plaintiff and the District of Columbia and its Mayor (collectively "the District"), along with Mr. Grieg and his wife, as defendants. The cases were consolidated in the trial court, and we consolidated the appeals as well on appellant's motion.

Hugh Jones died intestate on March 18, 1995. At the time of his death, he owned two pieces of real property, one located at 1347 Somerset Place, N.W., and the other at 828 Delafield Place, N.W. The house on Somerset Place is the property at issue in this case. Mr. Jones and his wife, Mildred Jones, purchased the house on Somerset Place in July 1962. Before that date the Joneses had resided at 828 Delafield Place, but when they bought the house on Somer-

set Place, they moved into it and lived there for the rest of their lives.[2] The purchase of the Somerset Place property was financed by a deed of trust, which conveyed the Joneses' interest in the property to two trustees. Under the terms of the deed of trust, property taxes were paid in installments to the mortgage company along with the monthly payments, and the mortgage company in turn paid the taxes when they became due. By release dated August 3, 1987, and recorded October 19, 1987, the trust and note were released, and from then on Mr. and Mrs. Jones owned the house free and clear.

For twenty-five years, beginning in July 1962, Mr. and Mrs. Jones paid their property taxes on the Somerset Place property by including the necessary sums in their monthly payments to the mortgage company. From the time the purchase loan was paid off in 1987, however, it appears that they paid no taxes on the property, so that when Mr. Jones died in 1995, the taxes were several years in arrears. The tax bills for the Somerset Place property were mailed to Mr. and Mrs. Jones at 828 Delafield Place. Neither Hugh Jones, Mildred Jones, nor Michael Jones ever requested to have the mailing address for the tax bills changed to Somerset Place.

At a tax sale on January 26, 1989, appellee Grieg made a successful bid for the Somerset Place property, and a "certificate of sale for taxes" was issued to Mr. and Mrs. Grieg. Pursuant to the tax sale statutes, a notice of the imminent expiration of the redemption period was sent by certified mail on December 14, 1990, to Hugh and Mildred Jones,[3] but it was returned by

---

**1.** The District of Columbia later "adopted" Grieg's motion. The court was apparently unaware of the "adoption" at the time it ruled on that motion, see pages 198–99, *infra,* but for the purpose of these appeals that does not matter.

**2.** Mildred Jones died on April 12, 1992, almost three years before her husband.

**3.** *See* D.C.Code §§ 47–1304 and 47–1306(a) (2001). The statute is supplemented by Regu-

the post office as "unclaimed." The notice was mailed to 828 Delafield Place, the address to which all previous correspondence regarding taxes on the Somerset Place property had been sent. No further attempt was made at that time to notify the Joneses of the expiration of the redemption period, and it expired in January 1991.

More than three years later, on March 8, 1994, the District of Columbia Department of Finance and Revenue ("DFR") sent to the Joneses—again at the Delafield Place address—a letter informing them that their property had been sold in January 1991 and that a tax deed would be issued to the purchaser if they did not pay $8,660.59 in back taxes before April 8, 1994.[4] On October 26, 1994, Mr. Grieg paid $23,707.41 for the Somerset Place property. A memorandum dated December 9, 1994, from the Chief of the Assessment Services Division to the Director of DFR, seeking her approval of the sale, stated: "A thorough search of our records has been made to ensure that all provisions of the law regarding tax sales have been followed." The sale was approved by the Director, and on March 29, 1995, Mr. Grieg received a tax deed for the property.

In 1997 Mr. Grieg filed a complaint in the Superior Court against Michael Jones, asking the court to remove a cloud on the title, and on the same day Mr. Jones filed a complaint against the District of Columbia, the Mayor, and Mr. and Mrs. Grieg, asking the court to declare the tax deed null and void and to enjoin the Griegs from conveying the property. After the two cases were consolidated, Mr. Grieg filed a motion for summary judgment. Mr. Jones filed an opposition to the motion on March 13, 1998, and the District filed a "Notice of Adoption of Motion for Summary Judgment" on June 12, 1998.

The trial court granted Grieg's motion for summary judgment on July 15, 1998. It ruled that "notwithstanding the status of defendant Jones' remaining claims against the District of Columbia ... it appears clear that plaintiff [Grieg] is entitled to judgment as a matter of law against the estate of the record owners." The court remarked that the District had not filed a motion for summary judgment, but it failed to note that the District had in fact filed a "Notice of Adoption of Motion for Summary Judgment" on June 12. The confusion resulted from the fact that the court had issued an earlier order on April 6 granting Mr. Grieg's motion, which the parties did not know about because it had never been docketed.[5] In the intervening period the District had filed its "notice of adoption" of Grieg's motion.

In response to the trial court's July 15 ruling, the District filed its own motion for summary judgment on July 21.[6] That motion was granted on August 25 "for the

lation 74–35, 9 DCMR § 317.3 (1998), which states in pertinent part:

> Not less than thirty (30) days prior to the expiration date of the two (2) year redemption period, the record owner shall be notified, by certified or registered mail, of the final date by which the record owner must redeem the property.

4. There is no indication in the record that this letter was ever received by appellant Jones or his father. It came to the court's attention because a copy of it was attached, along with

numerous other documents, to Mr. Grieg's motion for summary judgment.

5. According to the July 15 order, the April 6 order had not been docketed and mailed to counsel at that time because of "an administrative error." The July 15 order was substantially the same as the April 6 order.

6. The District's motion simply cited the July 15 order and asserted that it "necessarily entitled the District to a summary judgment ...."

reasons set forth in this court's order of July 15, 1998." [7] Mr. Jones now appeals from the granting of the two motions for summary judgment.

## II

■ In order to establish lack of notice, appellant Jones relied on the envelope containing the notice which had been returned by the post office as "unclaimed." Appellees did not sufficiently rebut this evidence; in fact, they did not rebut it at all. We hold that this envelope raised a genuine issue of material fact, precluding summary judgment.

■ A tax deed is "prima facie evidence of a good and perfect title in fee simple" to any property bought at a tax sale. D.C.Code § 47–1303.03(b) (2001). In challenging the validity of a tax sale, "the plaintiff bears the burden of producing evidence that the deed was improperly issued ... [and then] the burden of production shifts to the defendant, who must demonstrate that the tax sale was valid." *Keatts v. Robinson*, 544 A.2d 716, 719 (D.C.1988) (citation omitted).

In this case, appellant Jones produced evidence that the notice of expiration of the two-year redemption period was sent to the Delafield Place address and was returned "unclaimed." He also offered his own affidavit, stating that the Somerset Place property had been sold to Mr. Grieg "without ... notice of delinquent taxes ... and [the District] failed to give notice to my father of his right to redeem the property or the expiration of the period for redeeming the property." [8] Appellees not only failed to present any evidence to meet this claim of lack of notice; they did not even attempt to respond to, or to rebut, Mr. Jones' argument. We hold that the envelope returned as "unclaimed," coupled with the fact that the District did nothing thereafter to notify the record owners of the imminent expiration of the redemption period, raised a genuine issue of material fact on the question of notice.

■ "The power to convey property for nonpayment of taxes can be validly exercised only by strict compliance with the relevant statutes and regulations." *Malone v. Robinson*, 614 A.2d 33, 36 (D.C. 1992) (citations omitted). If the District does not strictly comply with the relevant statutes and regulations, "the sale is invalid and must be set aside." *Id.* (citations omitted). In particular, the District is required to send a notice of the expiration of the right of redemption to the record owner or owners "[n]ot less than thirty (30) days prior to the expiration date." *Id.* (quoting Regulation 74–35, *supra* note 3). Actual notice of the expiration of the redemption period is not mandated by the statutes or regulations; "notice by mail to the record owner generally satisfies due process commands." *Id.* (citations omitted). However, if the District of Columbia does send notice to the record owner by registered or certified mail in compliance with the statute, and the notice is returned unclaimed, the District is then required to take "some additional step" to notify the record owner. *Id.* We specifically held in *Malone* that the return of the notice as

7. In its August 25 order the court stated that the District's motion was "unopposed." By the time the District filed its motion, of course, the court had already granted Grieg's motion, which the District had previously "adopted." In these circumstances, we attach no significance to the fact that Mr. Jones failed to oppose the District's motion.

8. For present purposes, we assign no evidentiary value to Mr. Jones' affidavit, which was largely conclusory and does not appear to have been based on his own personal knowledge.

"unclaimed" should be a "red flag for some further action." *Id.* at 38.

When a notice of expiring redemption period informing the record owner that he could shortly lose his interest in his property is returned as unclaimed, the District knows that, as to that particular notice, the record owner may be no better off than if the notice had never been sent. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

*Id.* at 36–37 (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

 After the District received the returned notice marked "unclaimed," it did nothing further, and the redemption deadline passed. It was not until March 8, 1994, *more than three years later,* that the District sent a letter to the record owners *at the same address* stating that a tax deed was going to be issued unless they paid $8,660.59 in back taxes before April 8. The issue we must decide here is whether the second letter qualifies as the sort of "additional step" required under *Malone.* We conclude that it does not. Specifically, we hold that when a notice that a redemption period is about to expire is returned by the post office as "unclaimed," and the District makes no attempt thereafter to ensure that the record owner receives some kind of notice of the imminent expiration, it has

not complied with the "additional step" requirement that arises under *Malone* and Regulation 74–35.[9]

In *Malone* this court held, as we hold again in the case at bar, that the District did not take the necessary "additional step" when there was no evidence that the District did anything beyond sending the notice of expiration. 614 A.2d at 35. By contrast, in *Watson v. Scheve,* 424 A.2d 1089, 1091 (D.C.1980), we held that the District had complied with its statutory responsibilities when it sent two additional notices by mail after the initial notice was returned unclaimed. In fact, the owner actually received the third notice, albeit on the last day of the redemption period. The court in *Malone* stated that *Watson* and *Malone* were consistent and that in *Watson* the District took "the kind of reasonable additional steps" that it was required to take. *Malone,* 614 A.2d at 40.

In *Moore v. District of Columbia,* 332 A.2d 749, 751 n. 7 (D.C.1975), we concluded that the District had complied with due process by sending the required notice of expiration of the redemption period and one subsequent notice. However, we later pointed out in *Malone* that *Moore* was decided before Regulation 74–35 was adopted, and that the question of whether additional steps were required was expressly reserved in *Boddie v. Robinson,* 430 A.2d 519, 522 n. 4 (D.C.1981). Therefore, we held, "*Moore* does not control the disposition of an issue that this court, subsequent to *Moore,* recognized was open for resolution." *Malone,* 614 A.2d at 40.

---

**9.** In these circumstances, the letter that the District sent in March 1994, more than three years later, stating that a tax deed would soon be issued, fell far short of meeting this due process requirement of notice.

Given the facts before us, we need not decide whether due process would be satisfied if the District gave initial notice to the record

owner early enough to ensure that sufficient time is left for it to take *Malone*'s "additional step" *within the redemption period,* or some reasonably brief time thereafter, should that become necessary. At a minimum, the regulatory scheme cannot tolerate the three-year delay revealed by the present record.

Thus *Malone,* not *Moore,* dictates the result in this case.

The "unclaimed" letter squarely raised the issue of whether the District took the "additional steps" required by *Malone.* Appellees did not present any evidence on this issue. Because they failed to show that the District took any such "additional steps" (indeed, the available evidence in the record shows that it did not), appellees were not entitled to summary judgment. The judgment is accordingly reversed, and the case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

