Ronald HARRIS, Appellant,

v.

NORTHBROOK CONDOMINIUM
II, et al., Appellees.

No. 10–CV–189.

District of Columbia Court of Appeals.

Argued April 26, 2011.
Decided May 24, 2012.

Ronald Harris, Pro Se.

Patricia M. Thornton, Greenbelt, MD, with whom John E. Scheuermann, were on the brief, for appellee.

Before THOMPSON, Associate Judge, RUIZ, Associate Judge, Retired,* and NEBEKER, Senior Judge.

RUIZ, Associate Judge, Retired:

Ronald Harris appeals from the judgment of the Superior Court in favor of appellees, Northbrook Condominium II, Northbrook Condominium II Unit Owners Association, EJF Real Estate Services, Inc., and Mark Cunniff. Appellant contends that the notice of foreclosure on his condominium unit violated the District of Columbia Condominium Act and his due process rights because appellees knew he never received actual notice of the foreclosure. As there was no violation of the statute and no due process deprivation, we affirm.

## I. Factual and Procedural History

In 1999, appellant purchased condominium unit T–6, located at 3426 16th Street N.W. in the District of Columbia. The unit, part of Northbrook Condominium II ("Northbrook"), is governed by the Northbrook Condominium II Unit Owners Association ("Association") and managed by EJF Real Estate Services ("EJF"). Appellant lived in the unit with his wife and daughter until the spring or summer of 2005, when he moved to a residence on Downdale Drive in Laurel, Maryland. In December 2007, appellant leased the Northbrook unit to Jason Stonewall and his sister, Jocelyn Stonewall.

In February 2008, appellant became delinquent on his condominium payments, and EJF began mailing monthly late notices to appellant at his Laurel address. The delinquent account was forwarded to Northbrook's counsel, Scheuermann & Menist, for collection. On June 30, 2008, Scheuermann & Menist sent an initial de-

---

* Judge Ruiz was an Associate Judge of the court at the time of argument. Her status changed to Associate Judge, Retired, on September 1, 2011.

mand letter to appellant at both his Laurel address and at the Northbrook condominium address; the total amount due was $2,127.40. Appellant tendered a check from his wife's bank account totaling $1,904.58, which represented the overdue amount of condominium payments, but without interest, fees, and costs. Scheuermann & Menist, acting on instructions from Northbrook, returned the check as a non-conforming tender and partial payment. Appellant subsequently re-tendered the $1,904.58 check along with a check for the remaining balance of $222.82; however, when Northbrook presented the $1,904.58 check, the bank indicated that the account on which the check was drawn had been closed. Those checks were also returned as a non-conforming tender. From July 2008 to January 2009, Northbrook suspended its collection efforts because it was advised that Wachovia Mortgage, the holder of the first deed of trust on the Northbrook unit, was initiating foreclosure proceedings.

After Wachovia abandoned its foreclosure proceedings in January 2009, Northbrook resumed its collection efforts against appellant. Scheuermann & Menist notified appellant, in a January 15, 2009 letter, that if he did not pay the outstanding fees, his remaining condominium payments would be accelerated. This letter was sent to both appellant's Laurel address and the Northbrook condominium address. When Northbrook received no payment, it accelerated the assessments and recorded a lien against the Northbrook unit. A March 6, 2009 letter notified appellant of the acceleration and the lien. On June 8, 2009, a Notice of Foreclosure was recorded in the Land Records of the District of Columbia, and letters were sent to appellant to his Laurel address and Northbrook condominium address on that same day by certified mail and first-class mail. By this time, the total amount outstanding was $9254.38 ($7168.91 in unpaid condominium assessments, $411.67 in interest, and $1673.80 in attorney's fees). The June 8th notification letters were returned as undelivered ("unclaimed," "unable to forward," "moved left no address"). On July 6, 10, and 13, 2009, notice of the foreclosure sale was published in the *Washington Times*. The unit was sold at the foreclosure sale to the Association, the sole bidder at the sale, for $11,219.33, subject to Wachovia's first deed of trust in the amount of "approximately $287,000."

Appellant's amended complaint alleged wrongful foreclosure, conversion, trespass to land and to chattels, and violations of the District of Columbia Consumer Protection Procedures Act and the District of Columbia Condominium Act. Appellant requested compensatory damages and equitable relief for the improperly executed and recorded deed, and for the impeded access to his property.[1]

At trial, appellant stated that he did not receive notice of the foreclosure on his condominium unit even though he had provided his contact information to EJF. He testified that when he moved from the Northbrook unit to Laurel, he orally notified the previous property manager at Northbrook of his new address; he acknowledged, however, that he never submitted written notification of the Laurel address and that he never notified Northbrook directly. Appellant further testified that, in a March 2009 phone conversation about a water leak in his Northbrook unit, he also provided his new contact information to Jennifer Oberg, an EJF represen-

1. Appellant also filed for a temporary restraining order, and a preliminary and permanent injunction. On September 1, 2009, the court denied appellant's request for a temporary restraining order and injunctive relief.

tative.[2] Asked why he had not received the June 8, 2009 notice of foreclosure that had been sent to the Laurel address, appellant explained that he had asked the Laurel Post Office to hold his mail in April 2009 because he knew that he would be moving from Laurel but was not certain where he wanted the mail forwarded. The Postal Service held his mail until June 6, 2009, and notified him that after that date his mail would be returned to the sender unless he submitted an address change. Appellant never filed a forwarding address or an address change with the Postal Service. As a result, he stated, he learned of the foreclosure sale after the fact, when his tenant Stonewall brought it to his attention on July 25, 2009. On cross-examination, appellant acknowledged that his Northbrook unit had previously been in foreclosure proceedings, and he conceded that he "may" have received the March 6, 2009 letter informing him of the acceleration of payments and lien because he "received mail up until that date" at the Laurel address. He also acknowledged that his Laurel home had been subject to foreclosure in 2008.

Appellees presented testimony primarily from Oberg (the EJF representative) and Stonewall.[3] Oberg testified that in January 2008, when EJF became the Northbrook property manager, appellant's address on file was the Laurel address. She explained that EJF sought to confirm appellant's contact information, but appellant never responded to EJF's request.[4] Oberg testified that her March 2009 call log indicated that Stonewall—not appellant—had called regarding the leak in the unit. She stated that appellant never contacted her.[5]

Stonewall testified that until June 2009, he regularly sent rental payments to appellant's Laurel address, which were never returned as undelivered,[6] and that mail addressed to appellant often came to the condominium unit. Stonewall typically notified appellant of the mail, and appellant picked it up. Stonewall recounted an incident around June 2009 when he inadvertently opened mail addressed to "occupant" that indicated the condominium unit was under threat of foreclosure. When Stonewall asked appellant about the letter,

**2.** Appellant testified that he gave Oberg his "family address" in Virginia to which he was planning to move from Laurel, Maryland, as well as his phone number and email address, and that Oberg repeated the information back to him to confirm it. Appellant also introduced an email from Stonewall to Oberg dated March 25, 2009, in which Stonewall provided Oberg with appellant's email address and phone number.

**3.** A third witness, Elena Moore, a Scheuermann & Menist legal assistant, testified that she mailed the March 6 letter to appellant's Laurel address and the condominium address.

**4.** EJF requested that all condominium owners update their address information so that EJF could cross-reference the information with the addresses left by the previous management company.

**5.** During cross-examination, appellant's attorney began to ask Oberg whether she was aware that the June 8, 2009 certified letters had been returned as unclaimed. Appellees' attorney interjected that appellees were prepared to stipulate that both the certified mail and the first-class mail came back as undelivered. The court responded, "You can do it either way. I'll leave it up to [appellant's attorney] how he wants to prove that." Appellant's attorney did not acknowledge the stipulation, and instead continued to question Oberg about whether she was aware that the letters had been returned. Oberg answered that she was unaware of the returned letters.

**6.** At the end of June 2009, appellant and Stonewall agreed that Stonewall would make electronic rental payments via an inter-bank transfer.

appellant told him that "everything was fine."

In rendering its verdict, the court noted that it "will never know for sure" whether appellant telephoned Oberg with his new address. The court found Oberg to be a "perfectly credible witness" and that appellant "ha[d] every incentive to come in and try to upset the foreclosure at this point." The court found by a preponderance of the evidence that the phone call appellant claimed he made to Oberg with his new address and contact information never occurred. After asking the parties to brief whether Northbrook's notice procedures were deficient under the condominium bylaws, the relevant statutes, or the Constitution, the court subsequently found that appellant's due process rights were not violated by the foreclosure sale. The court found that "[appellees] did make reasonable efforts to notify [appellant] even though there is no proof that he was in fact notified."[7] The court, therefore, granted judgment to appellees. Appellant timely filed a notice of appeal.

## II. Notice of Foreclosure

On appeal, the only issue raised concerns the notice of foreclosure. Appellant argues that the trial court erred in finding that the notice complied with due process, and that appellees violated the provisions of the District of Columbia Condominium Act by foreclosing on his unit without notifying him of the foreclosure.

■ The District of Columbia Condominium Act, D.C.Code § 42–1901.01 *et seq.* (2001), requires that notice be given to the owner of a condominium unit prior to the foreclosure of his unit:

A foreclosure sale shall not be held until 30 days after notice is sent by certified mail to a unit owner at the mailing address of the unit and at any other address designated by the unit owner to the executive board for purpose of notice. . . . [8] The notice shall specify the amount of any assessment past due and any accrued interest or late charge, as of the date of the notice. The notice shall notify the unit owner that if the past due assessment and accrued interest or late charge are not paid within 30 days after the date the notice is mailed, the executive board shall sell the unit at a public sale at the time, place, and date stated in the notice.

D.C.Code § 42–1903.13(c)(4). Appellant does not dispute that in light of the trial court's finding, the notice Scheuermann & Menist gave complied with the literal

7. As the court framed the issue:

[Appellees] were trying to keep current address information. And from where they stood . . . they literally had only reason to believe that [appellant] didn't care, that he was evading. You have the circumstances that he had been warned that he was in forfeiture. There was no issue of him being sort of naïve about these things, having previously been in forfeiture for not paying the condo fees. They were aware that he was possibly forfeiting on the mortgage. . . . They were aware that he sent no, despite being solicited, sent no forwarding address as to where he was. They were aware that he had deliberately told the post office, not giving a forwarding address to them. So

the answer is well, yeah, they could have hired the detective, they could have searched their record and looked for a phone message and they could have done more. . . . The question is does the law require them to undertake the sort of exhaustive effort to find someone who they reasonably believe, based on the unequivocal actions of [appellant], didn't want to be found and was fully aware that he was entering forfeiture.

8. Likewise, the Northbrook bylaws specified that notice "shall be sent by United States mail to all unit owners of record at the address of their respective units or to such other addresses as any of them may have designated to the secretary in writing. . . ."

terms of the Condominium Act's notice requirement of mailing by certified mail to the Northbrook unit and the Laurel address. The question appellant raises is whether his due process rights were violated when appellees became aware—as they were willing to stipulate at trial, see note 5, *supra*,—that appellant did not receive the notices sent by certified or first-class mail. In interpreting the notice provisions of the Condominium Act, appellant urges, we should apply, by analogy, our interpretation of the notice requirements for tax sales by the District, which are substantively the same as those in the Condominium Act. In that context, we have held that, in order to avoid a "constitutional problem" with the regulatory scheme, the notice provisions for tax sales must be interpreted as requiring more—consistent with due process—than strict compliance with the language of the notice provisions if the District knows that a delinquent owner did not receive the notice of the tax sale. *Malone v. Robinson*, 614 A.2d 33, 36 (D.C. 1992); *see Jones v. Grieg*, 829 A.2d 195 (D.C.2003). Appellees respond that the court properly found that their efforts to notify appellant complied with due process requirements.

▮ Whether the notice of foreclosure sale sent to appellant violated his due process rights is a constitutional question that we review *de novo*. *See, e.g., In re N.N.N.*, 985 A.2d 1113, 1118 (D.C.2009) ("We … review appellant's constitutional claims—*i.e.* … that notice by posting violated appellant's due process rights—*de novo*."). It is elementary that the Constitution of the United States imposes limits only on state action. "The … Fifth Amendment[ ] appl[ies] to and restrict[s] only the federal government and not private persons." *Kelly v. United States*, 348 A.2d 884, 887 (D.C.1975); *see Jones v.*

*Flowers*, 547 U.S. 220, 223, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006) ("Before a State may take property and sell it for unpaid taxes, the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner 'notice and opportunity for hearing appropriate to the nature of the case.' ") (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Accordingly, there cannot be a true due process violation without a showing of state action. In this case, unlike *Jones* and *Malone*, which involved statutes and regulations under which the District of Columbia undertook sales of property to recover delinquent taxes, there are only private parties involved. Thus, the Due Process Clause is not implicated. *See Apao v. Bank of New York*, 324 F.3d 1091, 1093, 1095 (9th Cir.2003) (noting that "the Supreme Court has held that [foreclosure] procedures implicate the Fourteenth Amendment only where there is at least some direct state involvement in the execution of the foreclosure"; "[w]hat is required for state action in this area is 'overt official involvement' in the enforcement of creditors' remedies" and "[w]hile the bar for state action is low, *see Shelley v. Kraemer*, 334 U.S. [1, 13–14, 68 S.Ct. 836, 92 L.Ed. 1161 (1948) ], non-judicial foreclosure procedures like Hawaii's nevertheless slip under it for want of direct state involvement"); *cf. Knapp v. Semethurst*, 139 Md.App. 676, 779 A.2d 970, 987 (2001) (noting that a "mortgage foreclosure conducted pursuant to a legislatively enacted statute and rules promulgated by the Court of Appeals constitutes state action") (citing *McCann v. McGinnis*, 257 Md. 499, 263 A.2d 536, 539 (1970) for the proposition that "[t]he court is the vendor in the case of a sale under the power contained in a mortgage, just as it is a vendor in any

other chancery sale").[9]

■■■ Even if we were to consider appellant's challenge on the due process grounds on which the trial court ruled, we would likely conclude, as we now explain, that judgment for appellees can be affirmed based on the trial court's findings of fact. Due process does not require actual notice of the foreclosure, *see Jones*, 547 U.S. at 226, 126 S.Ct. 1708 but " '[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.' " *Id.* at 229, 116 S.Ct. 1186 (alteration in original) (quoting *Mullane*, 339 U.S. at 315, 70 S.Ct. 652). Applying that standard, the trial court found that appellant had experience with foreclosure proceedings, that he knew his condominium payments were delinquent, and that he was "evading" the foreclosure notice, insofar, as he failed to update his contact information with EJF and he declined to provide a forwarding address to the Laurel Post Office. The trial court credited appellees' "reasonable assumptions" that appellant "didn't want to be notified." Moreover, the court found that even though appellees could have "done more" to ascertain appellant's current address by, for example, looking through emails to find his telephone number, appellees made "numerous efforts to notify [appellant] about the delinquency."[10] In light of these factual findings, supported by the record and not clearly erroneous,[11] we conclude that appellees not only satisfied the statute's requirements, but also made efforts, reasonable under the circumstances, to provide

appellant with actual notice. *See Malone*, 614 A.2d at 38.

The judgment of the Superior Court is hereby

*Affirmed.*

---

9. Although the court raised the issue of lack of state action at oral argument, appellees have not made this argument on appeal, and the trial court's decision was premised on appellant's due process argument.

10. For example, in addition to sending the notice of foreclosure by certified mail, as required by the statute, appellees also sent notices by first-class mail to both addresses.

11. *See Bansda v. Wheeler*, 995 A.2d 189, 202 (D.C.2010) ("[W]e will not set aside the court's factual findings where there is evidentiary support for these findings and where they are not clearly erroneous.").