*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CV-0074

HAZEL B. THOMAS, APPELLANT,

v.

JAMES BUCKLEY, ET AL., APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAR-6746-13)

(Hon. Stuart G. Nash, Trial Judge)

(Argued October 13, 2016        Decided December 12, 2017[*])
(Published February 15, 2018)

*Stephanie K. Rones* argued on behalf of appellant, who filed her brief pro se.

*John C. Lynch*, with whom *M. Richard Coel* was on brief, for appellees James Buckley, University Hall Condominium Association, and Tilton Bernstein Management, Inc.

*Laura M.K. Hassler*, with whom *Aaron L. Handleman* was on brief, for appellee Linowes and Blocher LLP.

---

[*] The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment on December 12, 2017. It is now being published upon the court's grant of the Legal Aid Society of the District of Columbia's motion to publish.

*Brian W. Thompson*, with whom *Arthur F. Konopka* was on brief, for appellee 3000 7th Street 222 SB, LLC.

Before BLACKBURNE-RIGSBY, *Chief Judge*,[†] MCLEESE, *Associate Judge*, and FARRELL, *Senior Judge*.[‡]

BLACKBURNE-RIGSBY, *Chief Judge*: Appellant Hazel B. Thomas owned a condominium unit located at 3000 7th Street, Northeast, Washington, D.C., from 1981 until the foreclosure sale in 2012. From around 2002 to 2012, Ms. Thomas did not live in the unit but instead resided at 4317 20th Street, Northeast, Washington, D.C. For a significant period of time from at least 2004 to 2012, Ms. Thomas did not pay or make late condominium association dues. Therefore, the condominium association, appellee University Hall Condominium Association ("UHC")[1] sought to foreclose on Ms. Thomas's unit for her failure to pay dues.

---

[†] Chief Judge Blackburne-Rigsby was an Associate Judge at the time of oral argument. Her status changed to Chief Judge on March 18, 2017.

[‡] Senior Judge Reid was originally assigned to this case. She retired after the Memorandum Opinion and Judgment was issued. Following her retirement on December 12, 2017, Senior Judge Farrell was assigned to take her place in the decision.

[1] This decision applies primarily to UHC, the condominium association where Ms. Thomas's unit is located, because UHC owed Ms. Thomas the statutory duty to provide her notice of the foreclosure sale under D.C. Code § 42-1903.13 (2001). The remaining appellees include: Tilton Bernstein Management, Inc. ("TBM"), the property manager of UHC; James Buckley, President of the UHC Board of Directors; Linowes and Blocher LLP, UHC's counsel, which assisted in collecting Ms. Thomas's overdue assessment fees and with the foreclosure

(continued . . .)

UHC mailed Ms. Thomas notice of the foreclosure sale to the condominium unit, but not to her actual residence. Ms. Thomas claims that she never received notice of the foreclosure sale, which allowed the unit to be sold at auction without her knowledge, or her ability to take action. UHC concedes that Ms. Thomas may not have received "actual notice" of the foreclosure sale, but contends it fulfilled its statutory duty by sending notice to Ms. Thomas's unit only. The critical issue in this case is whether UHC should have also sent notice to Ms. Thomas's actual residence, pursuant to D.C. Code § 42-1903.13 (c)(4) (2001), which states that a condominium association shall send notice of a foreclosure sale "to the unit owner at the mailing address of the unit and at any other address designated by the unit owner to the executive board for purpose of notice."

The trial court granted summary judgment in favor of UHC and the other named defendants on the LLC's claim to quiet title and Ms. Thomas's counter-suit for wrongful foreclosure. The trial court concluded as a matter of law that because "Ms. Thomas [n]ever formally designated a different address to the [UHC Executive] [B]oard, it was legally sufficient for UHC to provide notice by certified mail to the unit only."

_____

(. . . continued)
proceedings against her; and 3000 7th Street 222 SB, LLC ("LLC"), the entity that purchased Ms. Thomas's condominium unit.

4

We conclude that UHC's notice of the foreclosure sale of Ms. Thomas's condominium did not comply with the notice provision under D.C. Code § 42-1903.13 (c)(4).[2] The record evidence in this case reveals that UHC was aware of Ms. Thomas's actual address. In Ms. Thomas's deposition, she stated that she filled out a form giving TBM notice of the change in her address. Further, there is documentation stating that UHC has sent Ms. Thomas important notices warning Ms. Thomas of her nonpayment of assessments at her actual address. Consequently, other than UHC's assertion that Ms. Thomas never gave them notice of her actual address, there is no evidence in the record to support this claim. We therefore hold, due to the uncontroverted facts in evidence, that Ms. Thomas

---

[2] The notice provision of the District of Columbia Condominium Act ("the Act"), D.C. Code § 42-1901.01 *et seq.*, has been updated twice during the pendency of this case, in 2014 and in 2017. The notice provision was not changed in the 2014 revision of the statute but it was revised in the 2017 version. D.C. Code § 42-1903.13 (c)(4)(A) now states:

> A foreclosure sale shall not be held until at least 31 days after a Notice of Foreclosure Sale of Condominium Unit for Assessments Due is recorded in the land records and sent by a delivery service providing delivery tracking confirmation and by first-class mail to a unit owner at the mailing address of the unit, *any last known mailing address*, and at any other address designated by the unit owner to the executive board for purposes of notice.

(2017) (emphasis added). The revised 2017 version of the statute, which was enacted subsequent to Ms. Thomas's foreclosure, now makes clear that notice must be sent to "any last known mailing address" of the owner.

"designated" her actual address to UHC, which required UHC to send notice of the impending foreclosure sale to her at that address. Therefore, we must reverse the trial court's grant of summary judgment and remand for proceedings not inconsistent with our decision. *See Logan v. LaSalle Bank Nat'l Ass'n*, 80 A.3d 1014, 1024 (D.C. 2013) (stating that a foreclosure sale is void if a condominium association fails to provide notice of a foreclosure sale to a unit owner because this lack of notice impairs the owner's ability to contest or prevent the foreclosure).

## I. Factual and Procedural History

Since 1981, Ms. Thomas has owned Unit 222 in the UHC building located at 3000 7th Street, Northeast, Washington, D.C.[3] The last time she actually lived in the unit was in 2002, after which she began living at her 4317 20th Street, Northeast, Washington, D.C. residence.

---

[3] Ms. Thomas and her then-husband owned and lived in the unit, periodically, until 2002 when they moved overseas. When Mr. and Ms. Thomas returned to the United States, Ms. Thomas did not live in the unit. It is unclear from the record when Ms. Thomas acquired sole ownership to the condominium unit. Appellee LLC contends that it was on November 20, 2006. On one occasion Ms. Thomas stated that it was "on or around [December 18, 2006] by divorce settlement," and in her deposition she stated that it was on May 16, 2009 as "part of the divorce settlement."

Ms. Thomas has leased her condominium unit to a tenant since approximately 2002. Ms. Thomas testified at her deposition that she notified appellees that she was renting her condominium unit, and "filled out a [TBM] form" that stated her current (actual) residence, 4317 20th Street Northeast. Although the record does not contain a copy of the form that Ms. Thomas filled out, UHC does not contest that Ms. Thomas filled out a form when she notified UHC and TBM that she was leasing her unit. After Ms. Thomas filled out the form, the record evinces UHC and TBM sent her notices and letters to her 20th Street residence.[4]

Pursuant to the condominium bylaws, Ms. Thomas was obligated to pay monthly UHC building assessment fees for the maintenance of the condominium's common areas and amenities. Ms. Thomas consistently made late payments or made no payments at all. On two prior occasions, Ms. Thomas defaulted on her assessments and UHC threatened foreclosure. On at least one of these occasions,

---

[4] The record contains at least four notices and letters from UHC or TBM sent to Ms. Thomas at her 20th Street address dated August 24, 2009, March 21, 2011, April 21, 2011 and August 8, 2011. The language in the April 21, 2011 letter addressed to Ms. Thomas's 20th Street residence states in part: "[t]he Community hereby *notifies* you that it intends to pursue all legal actions allowed by law . . . ." (emphasis added). Further, the trial court stated that "[t]he record demonstrates that written *notices* of unpaid assessments were sent by UHC to Ms. Thomas on March 21, 2011; April 21, 2011; and August 8, 2011, at the following address: 4317 20th Street NE, Washington, D.C. 20018." (emphasis added).

Ms. Thomas was notified of the potential foreclosure and avoided foreclosure by agreeing to pay off her debt with a lump sum payment.

When Ms. Thomas defaulted for the third time on her condominium assessments in December 2011, UHC filed a Notice of Condominium Lien for the unpaid assessment fees from February 1 to December 1, 2011, but did not send notice to Ms. Thomas at her actual residence. UHC does not contest that Ms. Thomas did not receive the notice, but argues that the notice it mailed to her condominium unit was legally sufficient to satisfy the notice provision of § 42-1903.13 (c)(4) because Ms. Thomas never formally designated that she wanted to receive notice at an address other than her condominium unit. On or around April 10, 2012, UHC's counsel filed a Notice of Foreclosure Sale of Condominium Unit for Assessments Due with the District of Columbia Office of Tax and Revenue Recorder of Deeds, and mailed notice of the upcoming foreclosure sale of the unit to Ms. Thomas's condominium unit. On April 29, 2012, the notice of foreclosure was returned to UHC and marked "Return to Sender, Unclaimed, Unable to

Forward." The foreclosure sale notice stated the unit would be up for sale at public auction on May 15, 2012, and the amount Ms. Thomas owed, $16,040.95.[5]

Notice of the foreclosure sale was published in *The Washington Post* as required by statute. At the public auction, Ms. Thomas's unit was sold to the LLC[6] as the "best and highest bidder for the bid price of $21,835.00." Subsequently, the LLC filed a suit to quiet title to the unit. In response, Ms. Thomas filed a complaint for wrongful foreclosure of her condominium.[7] In the quiet title case, Ms. Thomas then moved for summary judgment or, in the alternative, to

---

[5] More specifically, Ms. Thomas owed $11,983.50 in unpaid assessments, $1,361.20 in interest, $190.00 in assessment late charges, and $2,546.25 in attorney's fees.

[6] James Buckley, the President of the UHC Board of Directors, which initiated foreclosure proceedings on Ms. Thomas's unit, was also a member of the LLC at the time of the foreclosure sale.

[7] Ms. Thomas sought relief for the following claims: (1) breach of contract by the UHC Association; (2) slander of title; (3) breach of fiduciary duty; (4) unjust enrichment; (5) abuse of process; (6) "cloud on the title" of the condominium unit; and (7) invalidity of the foreclosure sale because all conditions precedent were not satisfied and the "default was fabricated by the Defendants." The individual and corporate defendants included: (1) James Buckley, (2) Chengetayi Sithole, (3) Santiago Properties, (4) UHC, (5) Linowes and Blocher LLP, (6) TBM, and (7) LLC. James Buckley served as president of the UHC Association Board and was a member of Santiago Properties. Santiago Properties was a member of the LLC. Chengetayi Sithole was the managing member of the LLC. Additionally, Ms. Thomas alleged that Linowes and Blocher LLP served as the "substitute trustee" to the foreclosure sale of her condominium unit.

consolidate the quiet title case with her suit to rescind the foreclosure sale of her condominium unit.

The trial court consolidated the two suits, and denied Ms. Thomas's motion for summary judgment, without prejudice. Appellees UHC, TBM, and Mr. Buckley moved for summary judgment in Ms. Thomas's wrongful foreclosure sale case, and appellee LLC moved for summary judgment in the quiet title case. The trial court granted summary judgment to the appellees and ordered that the unit be conveyed "free and clear of any right, title and interest . . . of [Ms. Thomas] . . . ." The trial court concluded that "[a]bsent evidence that Ms. Thomas ever formally designated a different address to the board, [for the purpose of notice,] it was legally sufficient for UHC to provide notice by certified mail to the unit only." The trial court further concluded that Ms. Thomas failed to demonstrate that she gave a "formal" designation to the UHC Board that she wanted to receive mail or notice at her 20th Street residence "exclusively." This appeal followed.

## II. Discussion

Ms. Thomas raises numerous claims as to why summary judgment was inappropriate in this case.[8] We conclude that her claim that she lacked adequate notice pursuant to D.C. Code § 42-1903.13, controls the outcome of this case because without adequate notice, the foreclosure sale is void and must be set aside. *Johnson v. Fairfax Vill. Condo. IV Unit Owners Ass'n*, 641 A.2d 495, 508 (D.C. 1994).

Our review is *de novo*. *Eaglin v. District of Columbia*, 123 A.3d 953, 955 (D.C. 2015) (we review questions of statutory analysis *de novo*); *Woodland v. Dist. Council 20*, 777 A.2d 795, 798 (D.C. 2001) (we review a grant of summary judgment *de novo*). Our determination of whether the notice was adequate is

---

[8] On appeal, Ms. Thomas argues that the trial court abused its discretion by granting the appellees' motion for summary judgment: (1) in the wrongful foreclosure case without first adjudicating the quiet title case or adjudicating both cases simultaneously; (2) in the wrongful foreclosure case because the LLC was an indispensable party to the case and was not, at that time, a party to the case; (3) in the wrongful foreclosure case because the deed transferring title was invalid on its face; (4) in the consolidated case because the LLC was not a bona fide purchaser; (5) in the quiet title case because the deed transferring title was invalid and therefore, the LLC was not a bona fide purchaser; and (6) in the wrongful foreclosure case for a second time when the motion was no longer pending.

dependent on the correct interpretation of the notice provision of D.C. Code § 42-1903.13 (c)(4), which states that:

> A foreclosure sale shall not be held until 30 days after notice is sent by certified mail to a unit owner at the mailing address of the unit **and** *at any other address designated* by the unit owner *to the executive board for purpose of notice.*

(emphases added). The trial court's ruling and UHC, in its deposition of Ms. Thomas, suggested that Ms. Thomas was required to "formally" designate her actual address, and that the designated address had to be "exclusive."

In general, "the intent of the lawmaker is to be found in the language that he or she has used." *Eaglin, supra,* 123 A.3d at 955 (internal brackets and citations omitted). The statutory language at issue here is *"and at any other address designated* by the unit owner *to the executive board for purpose of notice."* § 42-1903.13 (c)(4) (emphasis added). We begin by looking at the plain language of the statute and, if the plain meaning is clear, we will look no further. However, we may also look to the "legislative history to ensure that our interpretation is consistent with legislative intent." *Aboye v. United States,* 121 A.3d 1245, 1249 (D.C. 2015) (internal citations omitted).

12

UHC first asserts that the statute requires a designation for the purpose of notice. The literal definition of the term "designate" is "[t]o choose (someone or something) for a particular job or purpose[.]"[9] The phrase "to choose" is therefore, synonymous with "to designate." Neither the statute nor our case law define the term, "designated," to denote a formal designation. In fact, it is not exactly clear what UHC deems to be a "formal" designation or how the form Ms. Thomas filled out is insufficient.[10] UHC does not cite to any statutory language or case law in support of its contention that the form Ms. Thomas claims she filled out and which they do not contest, is insufficient to constitute a desire to "designate" her actual address. For example, in the context of an unemployment compensation review, the term, to designate, is used synonymously with the term, to choose, wherein "[t]he company retained the right *to designate* the employee's particular work schedule." *Green v. District of Columbia Unemployment Comp. Bd.*, 273 A.2d 479, 480 (D.C. 1971) (emphasis added). In the real estate context, in interpreting the term, successor, the court analogized the term, to designate, with the term, to assign and defines a successor as: "*to designate* one to whom property descends . .

---

[9] *Designate*, Black's Law Dictionary (10th ed. 2014).

[10] Appellees do not adequately raise the issue of whether Ms. Thomas properly notified "the executive board" as stated in the statute. D.C. Code § 42-1903.13 (c)(4). Therefore, any claim with regard to the portion of the statute requiring a unit owner to provide notice "to the executive board" is thus forfeited on appeal. *Cf. Oparaugo v. Watts*, 884 A.2d 63, 74 (D.C. 2005).

. in connection with the broader term, 'assigns . . . .'" *Edwards v. West Woodridge Theater Co.*, 55 F.2d 524, 526 (D.C. Cir. 1931) (emphasis added). In the context of historic landmark preservation, the Historic Preservation Review Board "is empowered *to 'designate* and maintain a current inventory of historic landmarks . . . .'" *Embassy Real Estate Holdings, LLC v. District of Columbia Mayor's Agent for Historic Pres.*, 944 A.2d 1036, 1044 (D.C. 2008) (internal brackets and citation omitted) (emphasis added). Finally, in the context of a retired federal judge sitting *by designation*, the statute analogizes the term *"designated"* with the term "assigned." *Boomhower, Inc. v. American Auto. Ins. Co.*, 220 F.2d 488, 490 & n.2 (D.C. Cir. 1955) (emphasis added). Accordingly, there is no ambiguity or reason why the word "designated" in § 42-1903.13 (c)(4) should take on a meaning different from its ordinary meaning of to choose or to assign.[11]

Further, the notice did not need to be "formal," just because the statute states the notice has to be *"for purpose of notice."* According to the plain meaning, there is no requirement that the notice be formal. Neither the Act nor the UHC bylaws define the phrase, "for purpose of notice," however, similar legislation does give

---

[11] *Carter v. State Farm Mut. Auto. Ins. Co.*, 808 A.2d 466, 472 (D.C. 2002) ("This court will not read into an unambiguous statute language that is clearly not there.").

an indication that the notice does not need to be formal. For example, in the context of judicial proceedings, "[n]otice may . . . be given in any . . . manner calculated to give notice and not prohibited by statute or court rule." D.C. Code § 16-4808 (d) (2012 Repl.). Further, in the same context, a similar statute provides in part:

> (a) . . . a person gives notice to another person by taking action that is reasonably necessary to inform the other person . . . (b) [a] person has notice if the person has knowledge of the notice or has received notice. (c) [a] person receives notice when it comes to the person's attention or the notice is delivered at the person's place of residence or place of business . . . .

D.C. Code §§ 16-4402 (a)-(c) (2012 Repl.). In the context of business organizations, not unlike a condominium association, the relevant statute states in pertinent part:

> [a] person has notice of a fact if the person: (1) [k]nows of it . . . [or] [h]as received a notification of it . . . [or] [h]as reason to know it exists from all of the facts known to the person at the time in question . . . (e) [a] person notifies or gives a notification to another person by taking steps reasonably required to inform the other person in ordinary course, whether or not the other person learns of it . . . (f) [a] person receives a notification when the notification: (1) [c]omes to the person's attention; or (2) [i]s delivered at the person's place of business . . . .

D.C. Code §§ 29-701.03 (b), (e)-(f) (2012 Repl.). Further, in the context of nonprofit corporations, "[u]nless the . . . bylaws provide otherwise, notice . . . shall be in the form of a record[ing] . . . [and] [n]otice may be communicated in person or by delivery . . . ." D.C. Code §§ 29-401.03 (a)-(b) (2012 Repl.).

Therefore, the plain language of *"for purpose of notice"* does not entail a formal method, but rather, just that the person who is notifying another person must communicate the information in such a way that would be "reasonably required to inform the other person." D.C. Code § 29-701.03 (e). Further, there is no formal procedure necessary to notify another of a fact, just to take reasonable steps sufficient to bring the information "to the [other] person's attention . . . ." D.C. Code § 16-4402 (c). Therefore, under the statute, so long as a unit owner takes measures reasonable to apprise the executive board of another address, the board has a duty to send notice.

Ms. Thomas complied with the plain meaning of the term "for purpose of notice" by giving actual notice to TBM of her 20th Street address. UHC and TBM then complied with the notice that Ms. Thomas provided, and began sending Ms. Thomas notice to the address she designated. By filling out TBM's form, Ms. Thomas acted "reasonably necessary to inform" TBM of her 20th Street address.

D.C. Code § 16-4402 (a). UHC and TBM had "reason to know [Ms. Thomas's 20th Street address] exist[ed] from all of the facts known" to both entities, because she notified them of the address. D.C. Code § 29-701.03 (b). Therefore, the manner through which Ms. Thomas notified appellees of her 20th Street address satisfied the "for purpose of notice" provision and therefore, UHC should have sent the foreclosure sale notice to her 20th Street address.

In addition, we disagree with UHC's argument that Ms. Thomas was obliged to designate or choose her 20th Street address to receive notice exclusively. In fact, this argument is in direct contradiction with the term "and" in the notice provision, which states that a condominium association must send notice to the unit address "*and at any other address designated* by the unit owner *to the executive board for purpose of notice.*" The term "and" is an indication that the legislators intended for a condominium association to send notice to more than one place if there is evidence that the unit owner has designated another place.[12]

---

[12] We must also note that publishing the notice of foreclosure sale in *The Washington Post*, alone, was not enough to satisfy the notice requirements of D.C. Code § 42-1903.13 (2001). Section (c) of § 42-1903.13 details the requirements that a condominium association must follow before initiating a foreclosure sale (to enforce a lien of past due assessments). Subsection (5) states in part: "[t]he executive board *shall* give public notice of the foreclosure sale by advertisement in at least 1 newspaper of general circulation . . . . [t]he newspaper advertisement *shall* appear on at least 3 separate days during a 15-day period to the date of the
(continued . . .)

UHC was therefore required to send notice to Ms. Thomas's condominium unit *and* to her 20th Street address because Ms. Thomas had previously "designated" that address "for purpose of notice" by filling out a form that stated she was leasing her unit and that her current mailing address was at her 20th Street address.[13]

---

(. . . continued)

sale." § 42-1903.13 (c)(5) (emphases added). In compliance with this requirement, UHC published notice of the foreclosure sale in *The Washington Post* on May 7, 9, and 11, 2012 and the unit was sold on May 15, 2012. However, the statute is written so that both subsections (4) and (5) must be complied with. For notice to be proper, the condominium association must first send notice to the unit owner as required by subsection (4) and then must publish notice of the public auction as required by subsection (5). Although appellees do not specifically raise the claim that only adhering to the requirements of subsection (5) is enough to satisfy the notice requirements of § 42-1903.13, we still find it important to clarify.

[13] The "formal" and "exclusive" language, which is not included in the Act, is also not included in the UHC bylaws. Article IX Section 9.1 of the bylaws, "Manner of Notice," states in pertinent part:

> whenever any notice is required . . . such notice may be
> given in writing, [or] by mail . . . to such . . . Unit Owner
> at such address as appears on the books of the
> Condominium . . . ."

Appellees' argument is inconsistent with the language of the bylaws, which required the UHC to send notice to "such address as appears on the books of the Condominium . . . ." According to D.C. Code § 42-1903.14 (b) (2001), the books of the condominium include "books and records kept by or on behalf of the unit owners' association, including the unit owners' association membership list, [and] mailing addresses of the unit owners[.]" We discern no error in the trial court's reasonable inference, that Ms. Thomas's address appeared on the books of the condominium because the address was known to appellees since at least 2003 and

(continued . . .)

Even though the plain meaning of our statute is clear and unambiguous, we may also turn to the legislative history of the notice provision for additional guidance. *Aboye, supra*, 121 A.3d at 1249 (internal citations omitted). The Act was enacted in 1976 and it creates a framework for the enforcement of issues between condominium associations and owners. It was updated in 1977, 1991, 1992, 2014 and 2017. The notice provision has become increasingly more specific with regard to the method condominium associations must employ to ensure unit owners are notified of an impending foreclosure.[14] The Council of the District of Columbia stated that, among many new unit owner protections, one purpose of the 2017 amended Act is "to improve notice requirements before foreclosure sales[.]"[15] The Condominium Owner Bill of Rights and Responsibilities

---

(. . . continued)
the condominium association previously used the 20th Street address to send her correspondence. Thus, even by their own bylaws, appellees should have sent notice to the 20th Street address.

[14] The version of the Act applicable in this case is the 1992 version, which was recodified in 2001. It states that notice shall be sent to the unit owner at the unit address and to any other address designated. The 2017 version incorporates the 1992 requirements and adds an additional requirement that notice shall be sent to the unit owner at *any last known mailing address*.

[15] This is clear by the Council's addition to the notice provision in the 2017 version that condominium associations must send notice to the unit to "any last known mailing address[,]" D.C. Code § 42-1903.13 (c)(4)(A) (2017), which is a clearer way of saying "any other address designated." The D.C. Council added the notice provision of "any last known address" in other foreclosure sale provisions in
(continued . . .)

Amendment Act of 2016, 2016 D.C. Sess. L. Serv. 21-241 (Act 21-657). The notice provision was meant to create a method through which notice is likely to reach a unit owner and notify her of the impending loss of her property.

The Act's legislative history lends support to our reading of the plain language of the statutory notice provisions.[16] This court has interpreted the 1992 version of the Act to require that a condominium association take "reasonable" measures to ensure that a unit owner is notified. *See Harris v. Northbrook Condominium II*, 44 A.3d 293, 299 (D.C. 2012).[17] Therefore, UHC violated the

---

(. . . continued)
other previously-enacted statutes, indicating an early intent to clarify this provision in foreclosure sales for past due assessments cases. *See, e.g., Abdel-Kafi v. Citicorp Mortg., Inc.*, 772 A.2d 802, 803-04 (D.C. 2001) (mortgage and trust deed case).

[16] *See, e.g., Steward v. Moskowitz*, 5 A.3d 638, 649 (D.C. 2010); *cf. Bank-Fund Staff Fed. Credit Union v. Cuellar*, 639 A.2d 561, 572 (D.C. 1994) ("The legislature clearly sought to provide a right of reinstatement that would avoid the loss to the homeowner of his or her home simply upon default in making a[n] [assessment] payment.").

[17] In *Harris*, a unit owner, Harris, moved from his condominium unit in Washington, D.C. to Laurel, Maryland. 44 A.3d at 295, 299. Harris orally notified the property manager of his new address but never submitted written notice. *Id.* At some point, the property management changed and it attempted to contact Harris to verify that the Laurel address was still up-to-date but Harris never responded. *Id.* at 296. When it foreclosed on Harris's unit, the property manager sent notice of foreclosure to Harris's unit address and the Laurel address. *Id.* at 294-95. Unbeknownst to the property manager, Harris had moved from the Laurel
(continued . . .)

statute by failing to send Ms. Thomas notice to her 20th Street address, which she had previously informed UHC of, and to which UHC and TBM had mailed correspondence on prior occasions for at least three years previously.[18]

---

(. . . continued)

address and did not provide a forwarding address to the postal service or to the property manager and was essentially "evading" notice. *Id.* at 296, 299. The property manager "made numerous efforts to notify appellant about the delinquency" including not only sending notice via certified mail to both addresses but also via first-class mail to both addresses. *Id.* at 295, 299 (internal alterations, quotation marks, and citations omitted). We ultimately held that the property manager "not only satisfied the [Condominium Act's notice] requirement, but also made efforts, reasonable under the circumstances, to provide [Harris] with actual notice." *Id.*

Harris only verbally informed the association of his address and attempted to evade the notice by moving multiple times and not providing a forwarding address. We found that the association's efforts to find a forwarding address for Harris satisfied the statutory notice requirements. In Ms. Thomas's case, not only did she notify UHC via a form, but UHC and TBM knew of her address and sent her mail previously, and she never moved or attempted to evade notice of the foreclosure. Therefore, UHC's efforts to notify Ms. Thomas were inadequate to satisfy the notice requirements because sending notice to a unit they knew she did not live in could not "reasonably" notify her of the impending sale of her unit.

[18] Finally, in the trial court, UHC argued that mailing the foreclosure sale notice to the condominium unit, under the assumption that Ms. Thomas's tenant would deliver it to her, constituted a reasonable and valid notice. We will not address the merits of this claim, however, because the notice was not actually delivered to Ms. Thomas's tenant, but was returned to UHC and marked "Return to Sender, Unclaimed, Unable to Forward."

## III. Conclusion

The statutory notice provisions of § 42-1903.13 (c)(4) required UHC to send notice of the foreclosure sale to both Ms. Thomas's condominium unit "*and* [to] any other address [that she] designated[.]" UHC failed to comply with those notice provisions when it sent notice only to Ms. Thomas's condominium unit. Therefore, we must reverse the trial court's grant of summary judgment to appellees. *See Logan v. LaSalle, supra,* 80 A.3d at 1024; *see also Indep. Fed. Sav. Bank v. Huntley,* 573 A.2d 787, 787-788 (D.C. 1990).[19]

Since we hold in favor of Ms. Thomas on the notice issue, we do not address the remaining issues she raises, which all stem from the wrongful foreclosure of her unit. *Cf. Transport. Leasing Co. v. Dep't of Emp't Services,* 690 A.2d 487, 490 (D.C. 1997). We remand to the trial court to vacate the order granting summary

---

[19] Ms. Thomas also argues that appellees violated her due process rights when they did not afford her proper notice. However, "foreclosure procedures implicate the [due process clause of the] Fourteenth Amendment only where there is at least some direct state involvement in the execution of the foreclosure." *Harris v. Northbrook Condo. II, supra,* 44 A.3d at 298 (internal alternations omitted) (citing *Apao v. Bank of New York,* 324 F.3d 1091, 1093 (9th Cir. 2003)). Here, UHC initiated non-judicial foreclosure proceedings with no state involvement. Therefore, we need not consider Ms. Thomas's challenge on due process grounds.

judgment in favor of the appellees and for proceedings not inconsistent with our decision.[20] On the issue of remedy, the trial court may be required to set aside the foreclosure sale or, if unfeasible, grant "an award of any damages of the type recoverable incident to a set-aside action." *Johnson, supra,* 641 A.2d at 508. Finally, our decision is predicated on UHC's failure to adhere to the notice requirement, and therefore, in light of our decision, the trial court may assess whether it should dismiss any or all of the remaining parties for this suit.

*So ordered.*

---

[20] We cannot *sua sponte* grant summary judgment in Ms. Thomas's favor because she did not move the trial court to do so in the consolidated case, nor did she ask this court to do so on appeal.